JOSÉ RIVERA VELÁZQUEZ y JOSÉ A. VERGNE, demandantes y apelantes, *v.* ZOILO SANTIAGO, demandado y apelado. JOSÉ RIVERA VELÁZQUEZ y JOSÉ A. VERGNE, demandantes y apelantes, *v.* JUAN TORRES SANTIAGO, demandado y apelado.

Núms. 7971 y 7972.—*Sometidos:* Diciembre 1, 1939. *Resueltos:* Marzo 19, 1940.

*Luciano Colón* y *R. Hernández Matos,* abogados de los apelantes; *José I. Fernández Segarra,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Estos dos casos envuelven exactamente las mismas cuestiones de hecho y de derecho, por lo que, por estipulación de las partes y con la aprobación de la corte inferior, fueron vistos y resueltos por la misma prueba. (T. de E., pág. 2.)

El 14 de septiembre de 1938 los demandantes presentaron las demandas de estos pleitos, en las que alegaron ser dueños de una finca rústica que describen, radicada en el término municipal de Ponce; que los demandados ocupan respectivamente dos porciones de terreno de dicha finca con dos casas de su propiedad; que no pagan canon o merced alguna por el terreno ocupado por dichas casas; que los demandados se niegan a desocupar dicho terreno trasladando las casas a otros sitios, a pesar de haber sido requeridos al efecto por los demandantes en diversas ocasiones; y terminan solicitando sentencia de desahucio contra cada uno de los demandados condenándoles a dejar a la libre y expedita disposición de los demandantes el terreno por ellos ocupado, con imposición de costas y honorarios de abogado.

Negaron los demandados todas las alegaciones de las demandas y al momento de llamarse los casos a juicio oral solicitaron permiso para adicionar a la contestación la defensa especial de que los demandados ocupan el terreno por título de prescripción de más de treinta años. Con la oposición de los demandantes se permitió la enmienda (T. de E., págs. 7 y 8.) Oída la prueba ofrecida por las partes,

la Corte desestimó las demandas en ambos casos, basando sus sentencias en una opinión que en lo pertinente dice así:

"Del apartado 3º. de cada una de las demandas aparece alegado, y aparece probado por los testigos de los demandantes y también por los testigos de los demandados, fuera de toda duda razonable, que cada uno de los demandados es dueño de una casa, enclavada desde hace varios años en la finca rústica de los demandantes.

"Así las cosas, entendemos que estos dos casos deben resolverse de acuerdo con la doctrina sentada por la Corte Suprema de Puerto Rico en el caso de *Ermita de Nuestra Señora del Rosario* v. *Collazo*, 41 D.P.R. 596, que es de perfecta aplicación a los que estamos resolviendo."

En apoyo de este recurso los demandantes imputan a la corte *a quo* los siguientes errores:

"1. La Corte de Distrito de Ponce erró, abusando de su discreción, al admitir la enmienda a la contestación de la demanda, presentada oralmente en el acto de la celebración del juicio en su segunda comparecencia, introduciendo defensa especial de prescripción.

"2. La corte erró al resolver que este caso debía resolverse de acuerdo con la doctrina sentada por la Hon. Corte Suprema de Puerto Rico en el caso de *Ermita de Nuestra Señora del Rosario* v. *Collazo*, 41 D.P.R. 596.

"3. La corte erró al dictar sentencia declarando sin lugar la demanda, por no estar en armonía con la prueba ni con la jurisprudencia."

Un examen de la evidencia que tuvo ante sí la corte sentenciadora nos pondrá en condiciones de determinar si en efecto se cometieron los errores señalados por los apelantes.

■■ Los apelantes adquirieron la finca rústica que se describe en la demanda por compra al Federal Land Bank of Baltimore, Puerto Rico Branch, por escritura núm. 103 de 15 de julio de 1938. Al tomar posesión de ella, encontraron allí a los demandados ocupando dos casas de madera, techadas de zinc, construídas por ellos poco después del ciclón de San Felipe, precisamente en los mismos sitios que habían ocupado con otras casas construídas también por ellos allá

por el año 1903 ó 1904, que fueron destruídas por el indicado ciclón.

La prueba de los demandados demuestra que ellos construyeron sus casas originalmente en 1903 ó 1904, con el permiso del entonces dueño de la finca José Joaquín Torres (T. de E., 34), para facilitar su trabajo en la finca como arrimados o agregados, y que al ser destruídas por el ciclón de San Felipe en 1928, construyeron en los mismos sitios las que hoy existen.

Con estos hechos por base, ¿procede una sentencia de desahucio? Los apelantes sostienen que sí y a ese efecto citan los sumarios de varios casos resueltos por este tribunal, donde se expone que la mera alegación de título sin prueba sustancial que la sostenga es insuficiente para establecer el conflicto de títulos que impide la acción de desahucio. Los apelados descansan en el caso de *Pesquera* v. *Fernández,* 16 D.P.R. 235, y la corte *a quo,* como hemos visto, funda su sentencia en el de la *Ermita de Nuestra Señora del Rosario* v. *Collazo,* supra. Si como alegan los demandados apelados, son ellos dueños de las casas por haberlas edificado y son dueños también del terreno que ocupan a título de prescripción extraordinaria, el caso de *Pesquera* v. *Fernández* es enteramente aplicable y no procede, por consiguiente, la acción de desahucio. Es por esa razón que debemos iniciar el estudio de esta cuestión determinando en primer término si en efecto los demandados tienen color de título, por lo menos, sobre los solares en controversia.

Hemos dejado establecido que los demandados ocuparon los dos solares con la autorización del dueño de la finca. Siendo ello así, son aplicables los artículos 376 y 1841 del Código Civil (ed. 1930) que dicen así:

"Art. 376.—Sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para adquirir el dominio.

"Art. 1841.—La posesión ha de ser en concepto de dueño, pública, pacífica y no interrumpida."

No poseyendo el terreno los demandados a título de dueños, sólo podían poseerlo bajo dos formas: a virtud de contrato o en precario. Si lo primero, claro es que no pueden adquirir el dominio por prescripción ni aun impugnar el título de su arrendador; si lo segundo, como parece suceder en este caso, tampoco pueden adquirir tal título, porque como dice la Enciclopedia Jurídica Española, tomo 25, pág. 339, el precarista adquiere y retiene la posesión natural y el que concede la cosa en precario conserva para sí la posesión civil. En armonía con este principio, la obra citada, en la página 340, refiriéndose a las acciones y excepciones de que puede hacer uso el precarista, dice:

"Contra el cedente, ninguna, ni aun la de prescripción, por el sencillo fundamento de que posee a nombre de otro, art. 1941 del Código; así que sea cualquiera el tiempo de su posesión, no podrá adquirir el derecho de propiedad."

Por lo expuesto, forzoso es concluir que los demandados, a pesar de que poseen los solares respectivos por más de treinta años, no han adquirido título de dominio sobre ellos, y por consiguiente sus casos se distinguen del de *Pesquera* v. *Fernández,* supra, en que en este último el demandado era dueño de la casa y dueño también del solar por prescripción extraordinaria.

▆▆▆ Resueltas adversamente a los demandados sus pretensiones sobre los solares, sus casos son en principio iguales al de *Ermita de Nuestra Señora del Rosario* v. *Collazo,* que sirvió de base a la sentencia apelada, sin que la circunstancia de haberse inscrito en este último la casa en el Registro de la Propiedad pueda distinguirlo de los casos de autos, pues el hecho de la inscripción sólo tendió a robustecer el título que sobre la casa tenía la demandada, cosa que no se discute y por el contrario se acepta expresamente por los demandantes, quienes alegan que las casas pertenecen a los demandados.

En el precitado caso de la *Ermita de Nuestra Señora del Rosario* v. *Collazo,* al revocar la sentencia apelada se dijo por este tribunal:

"Sentado lo que precede, tenemos que llegar a la conclusión de que siendo dueño la apelante de la casa que está enclavada en el terreno de la apelada, según la sentencia, existe un conflicto de títulos entre las partes, pues aunque la casa es un accesorio del terreno, nuestro Código Civil reconoce al que fabrica en suelo ajeno el derecho de no ser privado de su propiedad sin la correspondiente indemnización si fabricó de buena fe, cuestiones éstas que no pueden ser resueltas en un juicio sumario como el de desahucio."

Si bien los demandados no pueden reputarse poseedores del terreno ocupado por sus casas, puesto que ellos sólo han gozado de la posesión material del suelo, mientras los demandantes han retenido la posesión civil, no por ello dejan de ser edificantes de *buena fe,* como los llama Sánchez Román, pues construyeron sus casas con el consentimiento de los dueños del suelo. El citado tratadista, al fijar los derechos del que edifica en suelo ajeno, se expresa en los siguientes términos:

"*Edificación:* Es una de las formas de realizarse el derecho de accesión cuando en la construcción de un edificio, el suelo, los materiales, o ambas cosas, no son de la propiedad del edificante.

"Existen reglas comunes a la *edificación, plantación y siembra,* que son: 1ª., se reputa que todo lo incorporado al suelo cede en favor de éste por su calidad de *principal,* reservando la de *accesoria* para lo que se incorpora o agrega; 2ª., que como nadie debe enriquecerse en perjuicio de otro, ha de reintegrarse a su dueño el valor de los materiales, plantas o semillas y gastos de construcción, plantación o siembra que se justifiquen cumplidamente; 3ª., que procede también la indemnización de daños y perjuicios cuando intervenga mala fe por parte del edificante o por la del que plantó o sembró, probados que sean dichos daños y perjuicios; y 4ª., que la mala fe necesita justificación especial, puesto que la buena fe constituye una presunción *juris tantum.*

"Bajo estos principios, y concentrándonos ahora a la *edificación,* cabe distinguir, para mayor claridad, tres supuestos, únicos que

pueden ofrecerse: que se edifique en suelo ajeno con materiales propios; en suelo propio con materiales ajenos; o en suelo ajeno con materiales también ajenos.

"1º. Si se edifica de buena fe en suelo ajeno con materiales propios, el edificio cede *siempre* en favor del dueño del suelo, con derecho, por parte del de los materiales, para reclamar su importe y los gastos de construcción, pudiendo ejercitarse este derecho, por vía de *excepción,* cuando el dueño del suelo intentara reivindicar la accesión del edificio. Si no hubo buena fe, pierde el valor de los materiales el edificante. Conviene advertir que ésta es doctrina de los intérpretes más que de la ley; pues tanto las romanas como las de Partida, que son su fiel trasunto en esta materia, tenían en cuenta otra circunstancia, que era la de *ser* o *no poseedor* del suelo ajeno el edificante. Sólo cuando se reunían la *posesión* y la *buena fe,* es cuando asistía pleno derecho para reclamar el valor de los materiales y el salario de los trabajos; pero, sin embargo, al poseedor que edificaba de mala fe, por *equidad* se le reconocía también derecho a ser indemnizado de los gastos necesarios o útiles, y aun el de reivindicar los materiales cuando se derribara el edificio, siempre que no se probase que tuvo intención de donarlos. Este último derecho se declaraba también en la legislación romana a favor del edificante de buena fe, que no reunía la cualidad de poseedor.

"Después, la regla de Derecho en la materia concluyó con todas estas distinciones que la obscurecían, y por opinión común de los escritores, ya que no por precepto directo de legislación anterior al Código, está concebida en estos términos: 'Si el edificante en suelo ajeno con materiales propios, sea o no poseedor, obra con buena fe, tiene derecho al valor de los materiales y gastos de construcción; si obró de mala fe, pierde unos y otros; y, en ambos casos, lo edificado cede al suelo.' " Sánchez Román, "Derecho Civil", tomo 3, págs. 93–95.

Aunque de acuerdo con las reglas expuestas las casas que de buena fe edificaron los demandados ceden por derecho de accesión a favor de los demandantes como dueños del suelo, esta cesión no queda consumada hasta que los demandantes hayan cumplido la obligación recíproca que a ellos incumbe de pagar a los demandados tanto el importe de los materiales que invirtieron en la edificación como el montante de la mano

de obra. Así lo disponen los artículos 287, 297 y 382 del Código Civil (ed. 1930), que literalmente dicen:

"Art. 287.—La propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente.

"Art. 297.—El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en los artículos 382 y 383 de este código, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente.

"Art. 382.—Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

"Los gastos útiles se abonan al poseedor de buena fe, con el mismo derecho de retención, pudiendo optar el que le hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa."

Tratando sobre la obligación previa del dueño del suelo de indemnizar y del derecho recíproco del dueño del edificio a retener la posesión hasta tanto el pago se verifique, dice el mismo tratadista:

"El artículo 361 se ocupa de otra hipótesis, cual es la del caso en que se *edifique, siembre o plante de buena fe en terreno ajeno*, declarando realizada la *accesión* en favor del dueño, a no ser que optara por exigir al que edificó o plantó el pago del precio del terreno, o al que sembró tan sólo la renta correspondiente, porque la siembra es un obstáculo transitorio y temporal, y la ley presume en este caso el arrendamiento, que es de menos violencia que la venta; pero adviértase que siempre que el dueño del terreno en que se edificó, sembró o plantó de buena fe por otro, optase por utilizar el derecho de hacer suya la obra, siembra o plantación, o sea porque la *accesión se consume*, tal resultado jurídico no se producirá sin la previa *indemnización* establecida en los artículos 453 y 454." Id. pág. 149.

"Además, en el artículo 453, a la vez que se obliga al dueño o poseedor con mejor derecho al abono de dichos gastos, se concede al poseedor de buena fe vencido que los hiciera, un importante derecho, que es el de retención de la cosa hasta que se le satisfagan aquéllos; así como al que ha de abonarlos se le reconoce derecho

*alternativo* a elegir entre la satisfacción de dichos gastos o el abono del 'aumento de valor que por ellos haya adquirido la cosa'; y sobre ninguno de estos dos importantes extremos, que forman el contenido y totalidad del artículo 453, y que son aspectos recíprocos e inseparables de estas indemnizaciones de gastos, debidas al poseedor de buena fe, resulta hecha la referencia por el artículo 361 para el caso de accesión por edificación, siembra o plantación de buena fe en terreno ajeno, en términos tan claros, precisos y suficientes, como fuere necesario, para saber si la cita de dichos artículos y la *indemnización previa* a que viene obligado el dueño del terreno en que dicha accesión se verificó para poder utilizar el otro o hacer suya la obra, referida como está al artículo 453 citado, ha de entenderse acompañado del *derecho de retención* por parte del que edificó, sembró o plantó de buena fe en terreno ajeno, lo cual pudiera resultar algo *excesivo* en buenos principios de justicia, y si el dueño del terreno podrá también *optar* por abonar, en vez de los gastos útiles, el aumento de valor que por ellos haya adquirido la cosa. Esto último nos parece indudable, porque es una de las dos formas de *la indemnización* establecida en el artículo 453; y en cuanto a lo primero, o sea al derecho de *retención,* en estos casos de accesión optamos también por la afirmativa, ya por la referencia terminante a aquel artículo que el 361 hace, ya por el valor que haya de atribuirse a la palabra *previa,* que precede a las de *indemnización establecida.''* Id., págs. 150–151.

No es indispensable, a nuestro juicio, que se establezcan dos acciones sucesivas, una para fijar primero el montante de la indemnización y otra para reivindicar después el edificio. Aplicando por analogía la jurisprudencia sentada en el caso de *Nicorelli* v. *Ernesto López & Cía.,* 26 D.P.R. 55, relativa al derecho de fijar en una sola acción la fecha de vencimiento de una obligación sin plazo fijo y exigir a la vez el pago de la misma, se podría en una sola acción reivindicar la edificación y a la vez fijar el montante de la indemnización previa a que hemos hecho referencia.

No resultando de los autos que las partes hayan llegado a un acuerdo sobre el montante de tales reclamaciones, y no pudiendo éstas determinarse dentro del procedimiento sumario del juicio de desahucio, es obvio que las demandas deben ser desestimadas, sin perjuicio de que se recurra a la

acción ordinaria correspondiente dentro de la cual podrán dirimirse los derechos de una y otra parte.

Claro es que en este caso estamos partiendo de la base de que no ha existido pacto alguno entre las partes que regule los derechos de unos y otros con respecto a lo edificado. Si las partes, en previsión de situaciones como ésta, hubiesen estipulado de antemano sus derechos y obligaciones en lo que respecta a las edificaciones, tal estipulación hubiese sido la ley entre ellas y a lo pactado entonces hubieran tenido que atenerse ahora. Es de esperar que ninguna persona medianamente previsora se arriesgará a edificar en suelo ajeno, ni el dueño de éste permitirá que otro edifique sobre el mismo, sin antes celebrar los pactos convenientes que determinarán en todo tiempo las diferencias que puedan surgir entre ellos.

Habiendo llegado a la conclusión de que los demandantes son dueños del suelo, el error de haber permitido la corte a los demandados adicionar su contestación alegando que adquirieron el suelo por prescripción, de haber existido, no perjudicó los derechos de los demandantes, y, por consiguiente, no puede causar revocación.

*Procede, por lo expuesto, desestimar los recursos y confirmar las sentencias apeladas.*

El Juez Asociado Sr. Wolf disintió.*