FIDELA PALERMO, peticionaria, *v.* CORTE DE DISTRITO DE PONCE, HON. DOMINGO SEPÚLVEDA, JUEZ, demandada. ESPERANZA PALERMO, peticionaria, *v.* CORTE DE DISTRITO DE PONCE, HON. DOMINGO SEPÚLVEDA, JUEZ, demandada.

Núms. 1227 y 1228.—*Sometidos:* Febrero 17, 1941. *Resueltos:* Marzo 10, 1941.

190

*E. Pérez Casalduc,* abogado de las peticionarias; *R. Hernández Matos,* abogado del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos y las cuestiones de derecho planteadas en estos dos recursos son idénticos, y por tanto los resolveremos en una sola opinión.

Tomás Ortiz, Jr., radicó ante la Corte Municipal de Ponce dos demandas, una contra Fidela Palermo y otra contra Esperanza Palermo, y en cada una de ellas alegó en sustancia: que el demandante es dueño de un solar de 623 metros

cuadrados; que el 8 de abril de 1940 dió en arrendamiento a la demandada una parcela de dicho solar, por un canon mensual de $5, pagadero por mensualidades vencidas, sin que se fijara término para la duración del arrendamiento; que en junio 1, 1940, el demandante notificó por escrito a la demandada que daba por terminado el arrendamiento a partir del día 30 de ese mismo mes y la requirió para que dejara el solar libre y expedito para el día primero de julio del mismo año; que en el solar arrendádole la demandada tiene enclavada una casa; que la demandada sigue poseyendo el solar y se ha negado a desalojarlo. Basándose en las anteriores alegaciones, el demandante solicitó en ambos casos que se decretase el desahucio de las demandadas.

Contestó Fidela Palermo con una negación general y como defensa especial alegó: que en enero 29, 1939, ella adquirió la casa enclavada en el solar del demandante por compra a Elena Palermo; que ésta la adquirió en 1922 por compra a Alejo Rivera Borrero, quien la había adquirido en 1920 por compra a los esposos Espinet; que dicha casa fué edificada de buena fe hace más de 30 años con el consentimiento del dueño del solar y ha sido poseída durante todo ese tiempo por la demandada y sus antecesores en título, pública y pacíficamente, a título de dueños. Alegó además la demandada, que ella había ofrecido al demandante pagarle el valor del terreno o venderle la casa, habiéndose negado el demandante a aceptar una u otra oferta. La contestación de Esperanza Palermo es sustancialmente igual.

Vistos los casos ante la corte municipal, se decretó el desahucio de las demandadas "por terminación del contrato de arrendamiento." Apelados ambos casos, la corte de distrito dictó sentencia en contra de las demandadas, y éstas han acudido ante esta Corte Suprema en solicitud de un auto de *certiorari* para la revisión y anulación de dicha sentencia.

Los fundamentos de las peticiones de certiorari son en sustancia los siguientes:

1. Que la corte de distrito no tenía jurisdicción para conocer del caso en apelación, por no haberla tenido la corte municipal para conocer del mismo originalmente, toda vez que no existía contrato alguno de arrendamiento entre el demandante y la demandada.

2. Que la alegación del demandante sobre la existencia de un contrato de arrendamiento se ha hecho con el objeto de privar a las demandadas del derecho de apelación ante la Corte Suprema que hubiesen tenido si se hubiera radicado la demanda ante la corte de distrito, y también con el propósito de hacer inaplicables a estos casos las decisiones de esta Corte Suprema en *Rivera* v. *Santiago,* 56 D.P.R. 381, y *Díaz* v. *Ramos,* 51 D.P.R. 832.

En el acto de la vista las peticionarias ofrecieron una certificación de las notas tomadas por el taquígrafo en el acto de la segunda comparecencia ante la corte de distrito, y no habiendo objeción fué admitida a los efectos únicos de determinar si hay o no una cuestión jurisdiccional envuelta. Haremos un resumen de la prueba.

Declaró el demandante Ortiz, que él compró el solar a las hermanas Giraud en abril 8, 1940; que cuando lo compró fué con su suegro Miguel Alvarez a notificar a las señoras Palermo y les dijo que él había comprado el solar y que desde esa fecha en adelante tendrían que pagarle a él el alquiler del solar; que Esperanza Palermo convino en pagar el mismo canon anterior, o sea $5 mensuales, y la otra convino en pagar $4 mensuales; que después de haber sido así notificadas, ellas pagaron los cánones convenidos por los meses de abril y mayo de 1940; que en primero de junio él envió a las demandadas una carta, que fué admitida como *Exhibit* "B" del demandante. En la repregunta declaró que conocía a las demandadas desde hacía diez años, más o menos, y que durante ese tiempo las conoció viviendo en la casa enclavada en el solar objeto del desahucio; que al comprar el terreno él no compró las casas de las demandadas; que cuando él notificó a las demandadas que había comprado el solar y que desde esa fecha tendrían que pagarle a él, ellas aceptaron; que no recuerda haber declarado en la corte municipal que él solamente requirió a las demandadas para que desalojaran

la finca; que la carta de mayo 23, 1940, dirigida por el Lic. Noriega a las demandadas, fué escrita con su consentimiento.

El testigo Aníbal Rivera declaró solamente que fué él quien entregó a cada una de las demandadas la carta (*Exhibit* "B") del demandante en junio 3 de 1940.

Declaró Miguel Alvarez, que es suegro de Ortiz, el demandante; que estuvo en unión de Ortiz a notificar a las demandadas; que éstas aceptaron pagarle a Ortiz lo mismo que pagaban a los dueños anteriores; que él se ocupa de alquilar las propiedades de su yerno y de cobrar los alquileres; que llegó a cobrar dos meses de alquileres a las demandadas, dándoles recibos firmados por él. Y al ser repreguntado negó que hubiese declarado ante la corte municipal que él cobró los arrendamientos como dueño del solar.

Declaró la demandada Fidela Palermo, que desde 1923 vive en la casa enclavada en el solar del demandante, la cual le pertenece por compra a Elena Palermo; que la casa tiene más de 40 años de edificada pues para el ciclón de San Ciriaco ya estaba allí en el mismo sitio; que no celebró negocio alguno de arrendamiento con el demandante Ortiz; que conoció a las hermanas Giraud, a quienes pagó $5 mensuales por el arrendamiento del solar desde 1923 hasta 1940; que en abril de 1940, Miguel Pujols, esposo de Teresa Giraud, antigua dueña del solar, fué con Miguel Alvarez a ver a la demandada y le dijo: "Este señor, Miguel Alvarez, compró esto aquí...''; que ella pagó dos meses y los recibos estaban firmados por Miguel Alvarez; que nunca ha tenido contrato ni convenio con el demandante Ortiz; que cuando ella compró la casa le dijeron que podía vivir indefinidamente allí, pagando cinco pesos mensuales; que Pujols, refiriéndose a Miguel Alvarez, dijo: "Este señor es el que se entiende ahora, que nosotros le vendimos'' y que le pagara los cinco pesos mensuales de ahora en adelante; que ella paga contribuciones por la casa, que vale $400; que ella pagaba cinco pesos por ocupar el solar, porque hace veinte años que es

dueña y la madre de las Giraud le dijo que podía usar el solar indefinidamente y que podía comprar las casa en confianza, que ellas no necesitaban el solar; que nunca hizo convenio por escrito con las Giraud.

La declaración de la demandada Esperanza Palermo fué en lo esencial idéntica a la de la otra demandada.

Rafael Soltero Palermo declaró, que él vendió una de las casas en controversia a su tío José Ramón Palermo y éste se la vendió a la demandada Esperanza Palermo; que él adquirió la casa por compra a Gregoria Nieves; que durante el tiempo que poseyó la casa pagó a los dueños del solar cuatro dólares mensuales; que cuando él compró la casa, llamó al dueño del solar y éste le dijo que podía utilizar el solar toda la vida, pues a él lo único que le interesaba eran los $4 mensuales; que ese convenio fué de palabra.

Declaró como último testigo de las demandadas el abogado de las mismas, Eduardo Pérez Casalduc, y dijo: que en la vista ante la corte municipal el demandante Ortiz declaró que él había ido donde las demandadas solamente para requerirlas para que desalojaran la casa, y negó que hubiese celebrado convenio alguno con las demandadas; y que Miguel Alvarez declaró que él había cobrado los cánones de arrendamiento como dueño de la finca y no como agente del demandante.

El demandante adquirió el solar el día 8 de abril de 1940, sabiendo que las dos casas allí existentes pertenecían a las demandadas y que éstas pagaban $5 y $4 mensuales, respectivamente, por el uso del solar. Al convertirse en dueño del terreno, el demandante aceptó y ratificó el arrendamiento entre los antiguos dueños y las demandadas al avisar a éstas para que desde esa fecha en adelante le pagasen a él los cánones de arrendamiento. Así lo hicieron las demandadas al pagar a sus vencimientos los cánones de abril y mayo de 1940, según consta de sus propias declaraciones y de los recibos por ellas presentados.

■ La carta de 23 de mayo de 1940, escrita a las demandadas por el abogado del demandante, pidiéndoles que dentro de un término de quince o veinte días trasladasen las casas y entregasen el solar, no podía tener el efecto de convertir a las demandadas en poseedoras en precario o detentadoras del terreno ocupado por sus respectivas casas. En la fecha en que dicha carta fué escrita, ya el demandante había aceptado el convenio existente entre las demandadas y los antiguos dueños del solar y había recibido los cánones vencidos el día último de abril. En igual forma, al pagar a Ortiz, o a su representante Miguel Alvarez, los referidos cánones de arrendamiento, las demandadas reconocieron a Ortiz como dueño del solar y aceptaron y fijaron su propia condición como arrendatarias.

No puede existir duda alguna en cuanto a que las relaciones legales que originalmente existieron entre los antiguos dueños del solar y las personas que allí construyeron las casas con el compromiso de pagar un canon mensual por el arrendamiento del solar, son las de arrendador y arrendatario.

■ ¿Basta, como pretende la representación de las demandadas, el mero transcurso de los años para que esas relaciones de arrendador y arrendatario se transformen de tal manera que lo que fué en su origen un arrendamiento quede convertido en un censo enfitéutico, para que el dueño de la casa pueda continuar usando el solar a perpetuidad mientras pague la suma mensual estipulada? No se ha sometido a nuestra consideración precepto alguno de ley o de jurisprudencia que sostenga esta teoría, expuesta por vez primera en el acto de la vista ante la corte de distrito. La teoría expuesta en las contestaciones fué la de que las demandadas son poseedoras en precario y edificadoras de buena fe en suelo ajeno, con el consentimiento del dueño del terreno, lo que les daría derecho a exigir a éste que les pagase el valor de las casas.

Considerados los hechos ya expuestos y habiendo admitido el demandante que antes de adquirir la finca él sabía que las demandadas eran dueñas de las casas y que pagaban un canon mensual por el uso del solar; y apareciendo de la prueba que el demandante aceptó y ratificó expresamente el convenio ya existente, nos vemos obligados a resolver que las relaciones legales entre demandante y demandadas son las de arrendador y arrendatarias.

¿Son aplicables al caso de autos las decisiones de esta Corte Suprema en *Rivera* v. *Santiago,* 56 D.P.R. 381, y *Carrasquillo* v. *Ripoll y Maldonado, Int.,* 56 D.P.R. 395, en las que se resolvió que las casas edificadas en suelo ajeno, de buena fe, ceden por derecho de accesión a favor del dueño del terreno, siempre que éste pague previamente a los edificantes el importe de los materiales y el costo de la mano de obra; y, además, que no procede el desahucio sumario contra el que edificó con el consentimiento del dueño del terreno, a menos que exista un pacto que regule los derechos de los litigantes con respecto a lo así edificado?

La única diferencia entre los casos citados y el de autos es la de que en aquéllos los edificantes y dueños de las casas construídas en suelo ajeno poseían el terreno en precario, sin pagar canon o merced alguna, y en el presente caso, los edificantes y las demandadas, como sucesoras en título, han pagado durante más de veinte años un canon mensual por el uso del terreno. La diferencia no es, a nuestro juicio, substancial hasta el extremo de hacer inaplicable la citada jurisprudencia. Si las antecesoras de las demandadas edificaron de buena fe con el consentimiento de los dueños del solar y tanto ellas como las demandadas se comprometieron a pagar y pagaron siempre puntualmente un canon por el uso del terreno, ¿por qué ha de ser su derecho menor que el de aquellos que construyeron en iguales circunstancias, pero sin pagar nada por el uso del terreno? No vemos razón alguna que justifique la aplicación a este caso de una regla

distinta a la sentada en los casos arriba citados y que tuvo su origen en el de *Ermita de Nuestra Señora del Rosario* v. *Collazo,* 41 D.P.R. 596. Véanse artículos 287, 297 y 382 del Código Civil (ed. 1930).

No se trata en los casos de autos de simples contratos de arrendamiento en los que el arrendatario se comprometió a pagar un canon de arrendamiento por el uso de una casa perteneciente al arrendador. La situación en los casos que estamos considerando es distinta. El dueño del terreno lo dió en arrendamiento a las demandadas para el propósito específico de construir allí edificaciones de carácter permanente, para viviendas. Las demandadas o sus antecesores en título construyeron las casas de buena fe; y nada se pactó entre el dueño del terreno y los edificantes para regular los derechos de uno y otros con respecto a las edificaciones.

Tratándose de edificaciones de carácter permanente, no puede presumirse que la intención de una y otra parte fuera que el dueño del terreno pudiese por un simple aviso con treinta días de anticipación, obligar al edificante a destruir lo edificado, ya que el tratar de remover la edificación equivaldría a destruirla.

En el caso de *Rivera* v. *Santiago,* supra, al confirmar la sentencia desestimando las demandas de desahucio, dijimos:

"No resultando de los autos que las partes hayan llegado a un acuerdo sobre el montante de tales reclamaciones, y no pudiendo éstas determinarse dentro del procedimiento sumario del juicio de desahucio, es obvio que las demandas deben ser desestimadas, sin perjuicio de que se recurra a la acción ordinaria correspondiente dentro de la cual podrán dirimirse los derechos de una y otra parte."

*Por lo expuesto, debe declararse con lugar el recurso, anularse las sentencias dictadas por la Corte de Distrito de Ponce en ambos casos y desestimarse las demandas interpuestas en uno y otro caso, sin perjuicio de los derechos que pueda tener el demandante para iniciar los procedimientos que creyere convenientes para la protección de los mismos.*

El Juez Asociado Sr. Todd, Jr., no intervino.