RAFAEL Y AMADO COLÓN, demandantes y apelantes, *v.* CLUB ROTARIO DE ARECIBO y MANUEL OLIVER ARESTI, demandados y apelados.

Núm. 8959.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Febrero 21, 1945.

580

*F. M. Susoni, Jr.,* y *Luis Mercader,* abogados de los apelantes; *Largé & Lecároz* y *Eduardo Pérez Casalduc,* abogados, respectivamente, de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Manuel Oliver y su esposa Dolores Ramírez arrendaron al Club Rotario de Arecibo un solar de 6,820 metros cuadrados. El arrendamiento se celebró el 26 de julio de 1938 por un término de cinco años, prorrogable a cinco años más a opción del arrendatario, por un canon de treinta dólares mensuales. A principios de agosto siguiente el Club empezó a construir en el solar un edificio, que terminó en diciembre del mismo año, dedicándolo a su domicilio. Posteriormente Manuel Oliver y Dolores Ramírez se divorciaron, y el solar arrendado fué adjudicado en su totalidad al primero, quien por escritura de 16 de diciembre de 1941 ante el notario Antonio Lens Cuena segregó una parcela de 1,461 metros cuadrados, en la cual enclava el edificio del Club, y la vendió a Rafael y Amado Colón por $4,383. Al describirse en la escritura de compraventa la parcela de 1,461 metros, se consignó que contenía un edificio dedicado a club, y que la finca vendida se hallaba afecta a un contrato de arrendamiento a favor del Club Rotario.

Considerándose Rafael y Amado Colón dueños del solar y del edificio, instituyeron pleito de desahucio contra el Club para recobrar la posesión de ambas cosas. La Corte de Distrito de Arecibo desestimó la demanda de desahucio y su sentencia fué confirmada por este tribunal. *Colón* v. *Club Rotario,* 60 D.P.R. 750. Interpusieron entonces Rafael y Amado Colón el presente pleito de reivindicación contra el Club Rotario y Manuel Oliver, solicitando contra el primero que se declare en la sentencia que los demandantes son los únicos dueños. del solar y del edificio, y se le condene a pagar por concepto de daños las rentas que hayan dejado de recibir los demandantes a razón de setenta y cinco dólares

mensuales desde el primero de febrero de 1942, más costas y honorarios de abogado, y que se condene además al Club y a Manuel Oliver solidariamente a entregar el inmueble a los demandantes.

Por los méritos de la prueba, la corte inferior desestimó la demanda en todas sus partes por entender que no procedía la acción reivindicatoria en la forma establecida por los demandantes, ni tampoco la de daños y perjuicios contra el Club, sin perjuicio de cualquier acción que pudieran tener los demandantes contra Oliver derivada del contrato de 16 de diciembre de 1941.

En el presente recurso de apelación los demandantes ponen gran énfasis en que el edificio levantado por el Club constituye una mejora, y que como tal pertenecía al arrendador Oliver, quien al venderles el terreno les trasmitió también el derecho que tenía sobre el edificio. Para sostener que constituye una mejora, trataron de probar los demandantes que el edificio fué levantado sobre unas columnas de concreto y una plataforma de cemento que existían en el solar con anterioridad a la celebración del contrato de arrendamiento. A este efecto presentaron en evidencia el plano para edificar que el Club sometió para la aprobación del Departamento de Sanidad, en el cual calificaba la obra como una reconstrucción. Esta evidencia de los demandantes, como opinó el juez de la corte de distrito, fué controvertida con éxito por la del Club, de la cual resultó que efectivamente en el solar en cuestión había existido hacía muchos años un edificio que perteneció al Club Deportivo, que fué destruído por un incendio en el año 1929; que más tarde el entonces dueño de la finca, Andrés Oliver, levantó otra edificación sobre las ruinas, que dedicó a la industria de fabricación de dulces y fué destruída por un ciclón hace más de trece años, quedando entonces las ruinas a que se refieren los demandantes, consistentes en unas cuantas columnas, inservibles unas por la acción del fuego y de la intemperie a

que estuvieron expuestas por más de nueve años a corta distancia del mar, y derribadas otras por el ciclón; que la plataforma de cemento se hallaba agrietada por las mismas causas; y que después de celebrarse el contrato de arrendamiento el Club Rotario, con el consentimiento de Oliver, construyó el edificio en el solar con su propio peculio. En lo que respecta al plano sometido al Departamento de Sanidad, el Club presentó evidencia al efecto de que aunque describió como una reconstrucción la obra que iba a edificarse, luego de examinar cuidadosamente los materiales el ingeniero constructor aprovechó muy poco de las ruinas y en realidad construyó un nuevo edificio a un costo de $6,000 aproximadamente con la sola excepción de la plataforma que reparó y de algunas columnas que pudo aprovechar.

Que no se trataba de una mejora que había de pasar al dueño del solar al terminar el contrato de arrendamiento quedó perfectamente demostrado por el hecho de que tanto el Club como el dueño del solar consideraron el edificio como de la exclusiva propiedad del Club. Así lo comprueba la carta de 24 de enero de 1941 dirigida por Oliver al secretario del Club, José Pérez Paredes, en la cual se quejaba de que el Club no pagaba puntualmente las rentas y terminaba con el siguiente párrafo:

"Tengo también el gusto de informarles que si ese Club interesa los terrenos que actualmente ocupa, estoy dispuesto a venderlos a la base de $2.25 metro o caso contrario que ustedes quisieran vender podría también comprarles lo edificado por ustedes a un precio razonable de tasación."[1]

---

[1] Uno de los abogados de los demandantes, al ofrecerse en evidencia esta carta, expresamente aceptó que había sido suscrita por Oliver en la fecha que decía la carta, pero se opuso a su admisión porque según él no hacía fe en contra de los demandantes.

El artículo 1181 del Código Civil (ed. 1930), en el que sin duda basaron su oposición los abogados de los apelantes, en lo pertinente dice:

"La fecha de un documento privado no se contará respecto de terceros, sino desde el día en que hubiese sido incorporado o inscrito en un registro público, desde la muerte de cualquiera de los que los firmaron, o desde el día en que se entregase a un funcionario público por razón de su oficio."

Resulta además de la prueba que cuando los demandantes compraron al demandado Oliver el solar de 1,461 metros no aparecía del registro que existiera el edificio que hoy tratan de reivindicar. Fué en la escritura de compraventa que por primera vez se mencionó el edificio. No constando del registro al tiempo en que los demandantes compraron el terreno que el vendedor fuese dueño de la edificación, no pueden ellos invocar la condición de terceros con arreglo a la Ley Hipotecaria, pues no adquirieron el edificio de quien en el registro apareciera con derecho para venderlo. No cons-

---

Comentando Manresa el artículo 1227 del Código Civil español, idéntico al párrafo que hemos transcrito del 1181 del nuestro, luego de exponer la razón del precepto legal, que no es otra que la autenticación de la fecha, evitando así el fraude a tercero haciendo pasar un documento como de fecha anterior a determinado acto, cuando en realidad no lo es, dice:

"Respecto de los terceros, la ley limita los efectos del documento privado al elemento de más fácil comprobación en ellos: la fecha, y lejos de determinarla por lo que resulte del mismo documento, la fija con relación a otros hechos o documentos públicos, sin conceder fuerza, con relación a esas personas, a la expresión de fecha que en dicho documento se hiciere.

" .

"La incorporación o inscripción en un registro público, comprende para estos efectos cualquier asiento más o menos breve, con tal que baste a dar idea inequívoca del documento de que se trate, puesto que lo que se trata de hacer auténtico es la fecha y no el contenido del documento.

"

"En cuanto a la entrega del documento a un funcionario público, exigiendo la ley que lo sea hecha por razón de su cargo, se entiende lógicamente que ha de hacerse con tales fin y forma, que pueda aquél acreditarla como funcionario que es, y con actos, diligencias o documentos propios de su cargo, no particularmente como testigo.

"Fuera de esas bases de concepto y autenticidad que el Código fija, creemos indudable que puede admitirse otra; la existencia de un acto por el cual el tercero tenga conocimiento indudable de la del documento, v. gr., la notificación al mismo, *o aun sin ella reconozca dicha existencia.* Fúndase esta adición, de bien sencilla comprensión, en que nadie puede ir contra sus propios actos, y en que se ha realizado en tales supuestos el fin que este artículo persigue. La fecha será la de esos actos de comunicación al tercero o reconocimiento por éste, *a no ser que en este último caso convenga aquél también en aceptar como cierta la que en el documento de que se trate apareciera fijada.*" (Bastardillas nuestras.) Manresa, Comentarios al Código Civil (segunda edición, 1907), volumen VIII, págs. 501, 502, 503.

Consideradas las manifestaciones del abogado de los apelantes, opinamos que el precepto del artículo 1181 del Código Civil quedó sustancialmente cumplido, y por consiguiente la carta perjudica a los apelantes.

tando esa circunstancia del registro, la posición de los demandantes es la de terceros con arreglo al Código Civil, y como tales sólo pueden adquirir del vendedor lo que éste legalmente pudo trasmitirles. No siendo Oliver dueño del edificio, aunque por la escritura intentase venderlo, ningún título sobre él podía legalmente trasmitir a los compradores. Además, habiendo construído el edificio con el consentimiento del dueño del solar en las condiciones ya expresadas, el Club es un edificador de buena fe cuyo título al edificio ha sido expresamente reconocido por el anterior dueño del solar, Oliver. En tales circunstancias son de aplicación los artículos 297 y 382 del Código Civil, que prescriben:

"Artículo 297. El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en los artículos 382 y 383 de este Código, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente."

"Artículo 382. Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

"Los gastos útiles se abonan al poseedor de buena fe con el mismo derecho de retención, pudiendo optar el que le hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa.".

Véase la discusión que sobre el alcance de estos artículos se hace en el caso de *Rivera* v. *Santiago,* 56 D.P.R. 381.

 El Club demandado admite en su contestación la existencia de la escritura, y alega que posee el solar a título de arrendamiento y el edificio en concepto de dueño. Arguye, sin embargo, en lo que al solar respecta, que en la escritura de compraventa se hizo constar que el solar estaba afecto al contrato de arrendamiento, y que antes del vencimiento de los primeros cinco años del arrendamiento notificó a Oliver su resolución de prorrogar el contrato de acuerdo con la opción. El hecho de que en la escritura de compra-

venta se hiciese constar que la finca estaba afecta a un contrato de arrendamiento a favor del Club, y que de ello se hiciese mención en el registro al inscribir la escritura de compraventa, no perjudicó a los apelantes, pues de conformidad con el artículo 1439 del Código Civil; los arrendamientos de bienes raíces que no se hallen debidamente inscritos en el registro no surtirán efecto con relación à terceros. El efecto de esa cláusula en la escritura sólo fué notificar a los compradores que existía un contrato de arrendamiento, del cual ellos también tenían conocimiento personal. Esa mención en el registro no constituyó una inscripción del arrendamiento, sino una simple mención de una obligación personal. Aparte de que la prórroga del contrato fué notificada por el Club a Oliver el 26 de marzo de 1943 cuando la parcela había sido vendida por Oliver a los apelantes desde el 1941, y por consiguiente no podía prorrogar el arrendamiento en cuanto a la parcela segregada quien ya no era dueño de ella, el artículo 1461 del Código Civil dispone que el comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria. En el presente caso no hubo pacto en contrario, no es de aplicación la Ley Hipotecaria, puesto que el arrendamiento no estaba inscrito, y los compradores, ahora apelantes, notificaron al Club su resolución de terminar el arrendamiento que el Club tenía, exigiéndole que dejase a su disposición el solar y el edificio. En tales circunstancias, los apelantes se colocaron en condiciones de hacer uso del derecho que como dueños del terreno les confiere el artículo 297, reivindicando la finca previo pago al Club del precio de los materiales y mano de obra invertidos en el edificio, teniendo derecho el Club a retener la posesión del edificio hasta tanto haya recibido la doble compensación. Pero como sostuvimos en *Rivera* v. *Santiago*, supra, no es indispensable que se establezcan dos causas de acción sucesivas, una para fijar el montante de la indemnización y otra

para reivindicar el edificio. En una sola acción puede fijarse el montante de la indemnización y previo el pago de ésta obtener el edificio de conformidad con los artículos 297 y 382 del Código Civil. En este caso los demandantes no han optado por pagar esa indemnización al Club, y por el contrario pretenden desposeerlo de su propiedad sin compensación alguna. Siendo ello así, la acción establecida por los demandantes en lo que al edificio se refiere no procede, si bien procede para reivindicar el solar.

*Procede por lo expuesto modificar la sentencia apelada en el sentido de declarar que los apelantes son dueños del solar en cuestión, y que pueden hacer suyo el edificio, no pudiendo reivindicar el solar y el edificio mientras no indemnicen al Club el valor de los materiales y mano de obra invertidos en la edificación, y así modificada, confirmarse.*