CARLOS BERROCAL FERRER y su esposa DANIELA SÁNCHEZ DE BERROCAL, peticionarios, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE MAYAGÜEZ, HON. ÁNGEL FIOL

NEGRÓN, JUEZ, demandado; FRANK FOURNIER, interventor.

Número 1962.

*Sometido:* 7 de abril de 1953. *Resuelto:* 30 de junio de 1953.

A. *Nazario Janer,* abogado de los peticionarios; *Enrique Báez García,* abogado del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Este caso se inició en el extinto Tribunal Municipal de Puerto Rico, Sala de Mayagüez. En apelación, el Tribunal de Distrito, Sala de Mayagüez, celebró el correspondiente juicio *de novo* bajo las leyes entonces vigentes,[1] y procedió a dictar sentencia declarando sin lugar la demanda. El 30 de julio de 1952, este Tribunal expidió el auto de *certiorari* para revisar la sentencia así dictada.

Las conclusiones del tribunal a quo sobre los hechos del caso, las cuales no han sido impugnadas, son las siguientes:

"1. Los demandantes Carlos Berrocal Ferrer y Daniela Sánchez son casados entre sí, mayores de 21 años de edad, y vecinos de Mayagüez, Puerto Rico; y el demandado Frank Fournier es mayor de 21 años de edad, casado con Monserrate Rodríguez y también vecino de Mayagüez, Puerto Rico.

"2. Los esposos demandantes son dueños de una finca urbana que se describe en la demanda así:

'Solar de 275 metros cuadrados, sito en la calle Boulevard Santiago Veve, esquina Alameda Cristy. Colinda por el norte, con el Boulevard Veve; por el sur, con propiedad de María Luisa Arcelay; por el este, con casa residencia propiedad de la Suce-

---

[1] La demanda se radicó en el Tribunal Municipal en abril de 1951 y fué resuelto en apelación el 26 de junio de 1952, antes de la vigencia de la actual Ley Orgánica de la Judicatura (Ley núm. 11 de 1952, (2) pág. 31).

sión Bianchi; y por el oeste, con la Alameda Cristy y la Escuela Farragut.'

"3. El día 9 de junio de 1945, por documento privado suscrito ante el notario Enrique Báez García, los esposos demandantes dieron en arrendamiento al demandado el solar antes descrito por el término de cinco años y canon de $30 mensuales, pagadero éste por mensualidades vencidas, y sujeto a las siguientes condiciones especiales:

"D. Hacen constar los comparecientes que si antes de vencerse el término del contrato, o sea, antes de los cinco años, el señor Fournier desistiere de continuar el arrendamiento, éste vendrá obligado a quitar y remover toda construcción que hubiere efectuado sobre el solar arrendado, dejándolo en las mismas condiciones en que lo encuentra al empezar el contrato.

"E. Hacen constar asimismo los comparecientes que si después de transcurrido el término de cinco años los arrendatarios (sic) decidieren construir algún edificio para negocio en este solar, vendrán obligados a dar la oportunidad al señor Fournier de alquilar la construcción que se efectúe.

"F. Hacen constar los comparecientes, por último, que el señor Fournier queda en libertad de fabricar e introducir mejoras sobre el solar arrendado siempre que las mismas estén a tono con el progreso y necesidades del negocio.

"4. El día 2 de julio de 1945, por documento privado suscrito ante el notario Alfredo Arnaldo, Jr., los esposos demandantes y el demandado adicionaron al referido contrato de arrendamiento las siguientes tituladas 'Cláusulas Complementarias':

"H. Al vencerse el término fijado para este arrendamiento, o sea, el término de cinco años estipulado anteriormente, si no se llegare a un acuerdo sobre nuevo arrendamiento, el arrendatario vendrá obligado a retirar por su cuenta y con cargo a su peculio propio cualesquiera edificaciones que hubiere hecho en el solar a que se contrae el arrendamiento en término de medio año a contar desde la fecha de vencimiento del arrendamiento, siendo obligación del arrendatario continuar pagando el mismo canon estipulado para el dicho arredamiento sin que por este motivo pueda entenderse prorrogado o renovado el dicho contrato.

"I. Manifiestan los arrendadores no tener intenciones ni de vender el solar a que se contrae este arrendamiento ni el de comprar las edificaciones que en el mismo haga el arrendatario y que este contrato se ha hecho para facilitar al arrendatario

el solar con el fin de que pueda edificar en él, pero sujeto a la obligación de retirar las edificaciones que en el mismo haga al vencerse el contrato celebrado el 9 de junio en curso o cualquier otro que posteriormente se celebre entre ellos.

"J. Hase creído necesario esa aclaración por el hecho de haber observado los arrendadores que el arrendatario está fabricando en el solar dádole en arrendamiento con hormigón, para que dicho arrendatario quede advertido específicamente del hecho expuesto y proteja sus intereses en la mejor forma posible.

"K. A la entrega del solar, el arrendatario deberá dejar el mismo completamente libre de las edificaciones que hubiere hecho en el mismo, nivelado el terreno en la forma en que estaba cuando se le entregó, y limpio de todo escombro y materiales, con el apercibimiento de que de no hacerlo así, lo harán los arrendadores viniendo el arrendatario a pagarles el costo total de las obras que para obtener dicho fin tengan que ejecutar los arrendadores.

"5. Monserrate Rodríguez, casada ya con el demandado cuando se otorgaron y suscribieron los documentos privados relacionados en los apartados 3 y 4 ante, no fué parte ni intervino en forma alguna en los mismos.

"6. De acuerdo con el contrato de arrendamiento de 9 de junio de 1945 el demandado comenzó inmediatamente la construcción, que terminó después de otorgado el documento complementario de 2 de julio de 1945, de una edificación de carácter permanente consistente en una estructura de cemento, techada de zinc, que actualmente ocupa en parte con un negocio de efectos escolares y fuente de soda y en parte como su residencia en unión de su esposa e hijos. El edificio se construyó con dinero perteneciente a la sociedad de gananciales a un costo de más de ocho mil dólares ($8,000).

"7. El día 5 de junio de 1950 el demandante Carlos Berrocal Ferrer se dirigió por escrito al demandado informándole su propósito de no renovar el arrendamiento y requiriéndole la entrega del solar arrendado ya que se proponía 'retirarlo del mercado de inquilinato' dándole para dicha entrega un plazo hasta el día 9 de diciembre de 1950. El demandado no cumplió dicho requerimiento y en abril de 1951 (no aparece el día) los esposos demandantes iniciaron este procedimiento ante el Tribunal Municipal, Sala de Mayagüez, solicitando que se ordene al demandado la entrega del solar a los demandantes 'completa y totalmente libre y expedito, y en las mismas condiciones en

que estaba cuando se le entregó'. De la sentencia de dicho tribunal y sala que decretó el desahucio solicitado apeló el demandado.

"8. Los esposos demandantes adquirieron el solar arrendado al demandado con anterioridad al 17 de julio de 1947 y no tienen establecido en la ciudad de Mayagüez negocio alguno de naturaleza igual o parecida al negocio que tiene el demandado."

En vista de las conclusiones consignadas, el tribunal inferior determinó que los esposos demandantes no tienen derecho al decreto de desahucio solicitado, por los siguientes fundamentos:

"(1) Porque de acuerdo con el artículo 12 de la Ley de Alquileres Razonables (Ley núm. 464 de 25 de abril de 1946 (1) pág. 1327), enmendada por la Ley núm. 201 de 14 de mayo de 1948 (1) pág. 575) al vencerse el contrato de arrendamiento convenido por los aquí litigantes, éste quedó prorrogado obligatoriamnte para los arrendadores, 'por los plazos que fija el artículo 1471 del Código Civil y durante la emergencia declarada por la Ley de Alquileres Razonables. Por lo tanto, los arrendadores no podían obtener el desahucio por vencimiento del contrato.'

"(2) Que aunque el artículo 12A, autoriza al arrendador a negar la prórroga en algunos casos, ninguna de dichas excepciones—ocho en total—incluye la causal de retirar un *solar* del mercado de alquileres. Específicamente, el término 'local de comercio o negocio' del inciso 7 de dicho artículo, no incluye el caso de solares en que radiquen edificios comerciales pertenecientes a distintos dueños.

"(3) Los esposos demandantes tienen un camino expedito a una acción de accesión para hacer suyo el local o edificio construído por el demandado en el solar arrendado previo el pago . . . del coste de la edificación . . . Una vez dueños de la edificación podrán ejercitar los derechos que como tales dueños les corresponda inclusive el desalojo del demandado en los casos en que la Ley de Alquileres Razonables lo permita. Mientras tanto, no podrán desahuciar

al demandado del solar arrendado durante la emergencia declarada en dicha Ley.

"(4) Por otro lado . . . el convenio sobre destrucción y remoción de la edificación levantada por el demandado en el solar arrendado no es válido ni obligatorio ya que cuando dicho convenio se efectuó—cláusulas complementarias de 2 de julio de 1945—la edificación estaba comenzada, se trataba de una propiedad ganancial del demandado y su esposa y sin el consentimiento de ésta aquél no podía enajenarla, gravarla ni obligarla en forma alguna. Artículo 91 y 1313 del Código Civil, ed. 1930. Y descartada dicha estipulación, por nula, tratándose de una edificación de buena fe, no procedería tampoco el desalojo del demandado y de su esposa sin que antes se les pagase el coste de la edificación—materiales y mano de obra—lo que no podría resolverse ni determinarse en esta acción de desahucio y sí en la de accesión correspondiente."

Alegan los peticionarios en este recurso que erró el tribunal inferior en todas sus conclusiones de derecho, según las hemos expuesto. Veamos.

■■ Resolvió el tribunal a quo que habiendo el arrendatario construído una edificación con permiso de los arrendadores, siendo un constructor de buena fe, no procede la acción de desahucio y los demandantes debían haber tramitado una acción de accesión. *Rivera* v. *Santiago*, 56 D.P.R. 381; *Carrasquillo* v. *Ripoll, y Maldonado, Int.*, 56 D.P.R. 395; *Palermo* v. *Corte*, 58 D.P.R. 189; *Aybar* v. *Jiménez*, 60 D.P.R. 745. Ese principio no es aplicable, sin embargo, cuando exista un pacto o convenio que determine los derechos de las partes, y cuando se fabrica o edifica en solar ajeno en virtud de un convenio expreso entre las partes, las cláusulas del contrato deben prevalecer para determinar los derechos y obligaciones de las partes. *Villamil* v. *Camacho*, 64 D.P.R. 821, 823; *Figueroa* v. *Rodríguez*, 68 D.P.R. 266, 270. En el caso de autos, el arrendatario convino en retirar del solar arrendado, por su propia cuenta, y al vencer el término del

contrato de arrendamiento, cualquier edificación que él hubiese construído en ese solar. Ello excluyó su derecho a ser indemnizado por el costo de la construcción y hacía innecesaria la acción de accesión, teniendo derecho los demandantes a recuperar el solar mediante la acción de desahucio. La cláusula contractual relativa a la forma en que habría de entregarse. el solar arrendado era la ley entre las partes. Artículo 1044 del Código Civil.

 El tribunal sentenciador resolvió, sin embargo, que el pacto o convenio a que hemos hecho referencia era nulo, indicando que "cuando dicho convenio se efectuó—cláusulas complementarias de 2 de julio de 1945—la edificación estaba comenzada, se trataba de una propiedad ganancial del demandado y de su esposa y sin el consentimiento de ésta aquél no podía enajenarla, gravarla ni obligarla en forma alguna."

Los artículos 91 y 1313 de nuestro Código Civil disponen lo siguiente:

"Artículo 91.—El marido será el administrador de los bienes de la sociedad conyugal, salvo estipulación en contrario.

"Las compras que con dichos bienes haga la mujer serán válidas, cuando se refieran a cosas destinadas al uso de la familia, de acuerdo con la posición social de ésta.

"No obstante, los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges."

"Artículo 1313.—Sin embargo de las facultades que tiene el marido como administrador, no podrá donar, enajenar y obligar a título oneroso, los bienes inmuebles de la sociedad de gananciales, sin el consentimiento expreso de la mujer.

"Toda enajenación o convenio que sobre dichos bienes haga el marido en contravención a este artículo, y los demás dispuestos en este código o en fraude de la mujer, será nulo y no perjudicará a ésta ni a sus herederos."

El problema esencial consiste en determinar si un convenio para destruir o demoler un edificio perteneciente a la sociedad de gananciales equivale a un pacto para enajenar,

gravar u obligar tal edificio, cuya validez exija el consentimiento de la esposa, o si más bien constituye un acto de administración.

Bajo el régimen del Código Civil Español, el esposo tenía la facultad y el poder de enajenar u obligar a título oneroso los bienes inmuebles gananciales, sin el consentimiento de la esposa. 9 Manresa 630, 638, 5ª edición. Idéntico principio prevalecía bajo el Código Napoleónico, 8 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés, Vol. 8, página 572; *Garrozi* v. *Dastas*, 204 U. S. 64, 78. La restricción contenida en nuestro Código Civil en cuanto a la necesidad del consentimiento de la esposa al enajenarse o gravarse bienes inmuebles gananciales constituye una innovación en el sistema básico del Derecho Civil. Tal limitación, por constituir una norma de excepción, no debe ser ampliada judicialmente. *Cf. Ex parte Ramos*, 53 D.P.R. 374; *Vázquez* v. *Junta de Síndicos*, 59 D.P.R. 145; *Ingoldsby* v. *Juan*, 12 Cal. 564.

En Louisiana se ha conservado la facultad del esposo para disponer de los bienes inmuebles gananciales, sin el concurso de la esposa. Dart, *Louisiana Civil Code*, ed. 1945, pág. 136, artículo 2404; 2 De Funiak, *Principles of Community Property*, pág. 568. Lo mismo ocurre en Tejas, aunque con ciertas limitaciones. Texas, *Revised Civil Statutes*, 1936, artículo 4619, 2 De Funiak, ob. cit., 608; *McGrail* v. *Fields*, 203 P. 2d 1000. De otro lado, en California, Arizona, Idaho, Nuevo Méjico y Wáshington, prevalecen disposiciones similares a la nuestra. *Spreckels* v. *Spreckels*, 48 Pac. 228; *La Tourette* v. *La Tourette*, 137 Pac. 426; *Munger* v. *Boardman*, 88 P. 2d 536; *Cook* v. *Stevens*, 77 P. 2d 1100; *Greer* v. *Frost*, 20 P. 2d 301; *Schofield* v. *Gold*, 225 Pac. 71; *Pendleton* v. *Brown*, 221 Pac. 213; *Strong* v. *Strong*, 140 P. 2d 386; *Vaughan* v. *Roberts*, 113 P. 2d 884; *Trimble* v. *Trimble*, 26 P. 2d 477; *Coppedge* v. *Leiser*, 229 P. 2d 977; *Thomas* v. *Stevens*, 203 P. 2d 597; *Stabbert* v. *Atlas Imperial Diesel Engine Co.*, 238 P. 2d 1212; *Geoghe-*

*gan* v. *Dever*, 194 P. 2d 397; *Campbell* v. *Webber*, 188 P. 2d 130; *Arnett* v. *Reade*, 220 U. S. 311; 2 De Funiak, ob. cit. 551, 583. En cuanto al sistema prevaleciente en otros estados, véase 2 De Funiak, ob. cit. 574–580, 587–593, 594–598; 1948 *Cumulative Supplement*, 15–29. En cuanto al desarrollo reciente de esa doctrina, véase, De Funiak, *The New Community Property Jurisdictions*, 22 Tulane L. Rev. 264.

Ahora bien, una enajenación equivale a una trasmisión, cesión o traspaso de bienes o derechos, a título oneroso o lucrativo. Enciclopedia Jurídica Española, Tomo 13, pág. 565. *Cf. Santiago* v. *Rodríguez*, 72 D.P.R. 266; *Encarnación* v. *Salim*, 69 D.P.R. 766; *Méndez* v. *Registrador*, 68 D.P.R. 309; *Robles* v. *Guzmán*, 67 D.P.R. 718. En cuanto al acto de gravar bienes inmuebles, un gravamen equivale a una limitación del dominio o de algún derecho real impuesto sobre bienes inmuebles constituyendo los derechos reales, a su vez, un gravamen sobre una finca. Enciclopedia Jurídica Española, Tomo 17, pág. 252. En virtud de la facultad de gravar, el dueño puede desprenderse del ejercicio de una o varias de las facultades que integran el dominio, transfiriendo ese ejercicio a un tercero. Castán, Derecho Civil Español, Vol. 2, pág. 78. Al disponer el artículo 1313 de nuestro Código Civil que el esposo no podrá "obligar a título oneroso" los bienes inmuebles de la sociedad conyugal sin el consentimiento de la esposa, ello implica la prohibición de gravar o establecer obligaciones "in rem" sobre la propiedad ganancial, otorgando a otra persona derechos reales sobre la misma. *Cf. Torres* v. *Luiña*, 63 D.P.R. 107; *Morales* v. *Ceide*, 51 D.P.R. 27; *Parker* v. *Monroig*, 239 U. S. 83; Castán, ob. cit., 7, 10–17.

Al obligarse el demandado en este caso a demoler y retirar la edificación cuando se extinguiese el vínculo arrendaticio, él no se obligó a ceder o traspasar bienes inmuebles o derechos reales a un tercero ni a establecer o reconocer derechos reales o limitaciones sobre la edificación en benefi-

cio de los arrendadores. Por lo tanto, el pacto en cuestión no conllevaba una enajenación de, o establecimiento de un gravamen sobre, la edificación, no requiriéndose, por lo tanto, el consentimiento de la esposa. El pacto implicaba la obligación de devolver la cosa en el estado en que fué entregada. Artículo 1451, Código Civil. Y tenía el efecto de sujetar a un plazo resolutorio de cinco años el derecho adquirido contractualmente por el arrendatario de levantar la edificación. 29 Enciclopedia Jurídica Española, 582 et seq.; artículos 1078 a 1083 del Código Civil; 2 Castán, ob. cit. 510; 8 Manresa, ob. cit., Vol. 1, pág. 371. La demolición del edificio constituía un acto de administración, dentro de las facultades del esposo, sin requerirse el consentimiento de la esposa. Es cierto que la destrucción del edificio podía implicar la pérdida de valores económicos, pero tal pérdida está implícita en todo acto de administración. El esposo demandado pudo razonablemente creer que el valor del uso del edificio y del solar durante cinco años compensaba la pérdida del edificio, pero aun si él no actuó con entera prudencia al realizar tal acto de administración, ello no implica la nulidad del pacto, no habiendo fraude, ni enajenación del inmueble. *Cf. Garrozi* v. *Dastas*, supra. Siendo válido el pacto que imponía al demandado la obligación de remover, por su cuenta, la edificación al terminar el contrato, la parte demandada no tenía derecho a ser indemnizada con el valor del costo de construcción del edificio, como condición previa a su desalojo. Procedía, por lo tanto, la acción de desahucio, y no la de accesión. Habiendo estipulado las partes que los hechos alegados en la demanda son ciertos, y habiéndose alegado que los demandantes interesaban, de buena fe, recuperar el solar para su propio uso, y para retirarlo del mercado de alquileres, los demandantes demostraron tener derecho a desahuciar al demandado. *Roselló Hnos.* v. *Figueroa*, 74 D.P.R. 432; *Rivera* v. *R. Cobián Chinea & Co.*, 181 F. 2d 974. Tal derecho de los demandantes no está limitado a edificios sino que es también aplicable a solares.

Actuó erróneamente el tribunal a quo al dictar sentencia declarando sin lugar la demanda. *Debe anularse la sentencia recurrida y devolverse el caso a la Sala de Mayagüez del Tribunal Superior de Puerto Rico para que éste dicte sentencia declarando con lugar la demanda, con los pronunciamientos correspondientes que no sean incompatibles con esta opinión.*

El Juez Asociado Sr. Belaval disintió.