# PARKER *v.* MONROIG.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR PORTO RICO.

No. 287. Submitted October 12, 1915.—Decided November 15, 1915.

A community cannot enjoy an acquet free of the obligations insepa-
rably connected with it; and if it takes real-estate, as in this case,
subject to a servitude imposed by the master of the community
before acquisition, it cannot enjoy the property afterwards free from
such servitude because of the failure of the wife thereafter to unite
therein.

Porto Rico Code, § 4481, is only applicable to cases of lesion in cases
of sale embraced in § 4480 of that code, (§ 1375 of the previous code).

THE facts, which involve contracts affecting realty
afterwards becoming community property and the liability
of the community thereon, are stated in the opinion.

*Mr. N. B. K. Pettingill* for appellant:

The contract of which specific performance is prayed
was unenforceable, because it involved a conveyance of the
title to real estate situated in Porto Rico belonging to a
conjugal partnership, and only one member of that con-
jugal partnership had entered into the contract.

Such contract was unenforceable, because it was void
under the laws of Porto Rico, where it was made and was
to be performed.

A decree for complainants was unwarranted, because
it was necessarily prayed against a defendant who was
not a party to the contract decreed to be specifically en-
forced.

The decree as entered was unwarranted, because the
easement prayed for by the bill and provided for by the
contract enforced was not of the character granted by the
decree, and also because the action had been barred by

laches by analogy to the prescription fixed by § 1375 of the Civil Code of Porto Rico.

In support of these contentions, see *Amado* v. *Registrar*, 3 P. R. 134 (2d ed.); *Am. Colortype Co.* v. *Continental Co.*, 188 U. S. 104, 107; *Baltzer* v. *Raleigh &c. R. R.*, 115 U. S. 634, 648; *Bateman* v. *Riley*, 72 N. J. Eq. 316; *Boscio* v. *Registrar*, 14 P. R. 605; *Bruner* v. *Bateman*, 66 Iowa, 488; *Caballero* v. *Registrar*, 12 P. R. 214; *Crim* v. *Nelms*, 78 Alabama, 604; *Graybill* v. *Bough*, 89 Virginia, 899; *Hedges* v. *Dixon County*, 150 U. S. 182, 192; *Hodges* v. *Farnham*, 49 Kansas, 777; *Law* v. *Butler*, 44 Minnesota, 482; *Meek* v. *Lange*, 65 Nebraska, 786; *Parish* v. *United States*, 8 Wall. 489; *P. R. Gen. Tel. Co.* v. *Registrar*, 18 P. R. 823; *Richmond* v. *Robinson*, 12 Michigan, 193, 201; *Richards* v. *Greene*, 73 Illinois, 54; *Stephens* v. *Parish*, 29 Indiana, 260; *Van Ness* v. *Washington*, 4 Pet. 232, 282; *Vidal* v. *Registrar*, 12 P. R. 198.

*Mr. Frank Antonsanti* and *Mr. Frederick S. Tyler* for appellees.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

W. G. Henry, who had leased to Cornelius B. Parker, a married man, two farms, one Rio Hondo containing 440 acres and the other El Quinto embracing 278 acres, gave him in writing an option to buy both for the sum of $37,000 in gold payable on or before May 1, 1911. Shortly before that period Parker and the Successors of A. Monroig, a sugar manufacturing corporation, agreed the one to sell and the other to buy a piece of land "composed of about two hundred acres, a part of the farm known as El Quinto" for $125 per acre, and on the same day an agreement in writing was executed between the parties by which Parker created in favor of the corporation an

easement of way across the farms El Quinto and Rio Hondo for the operation of a private railway conditioned on the carrying out by the corporation of the purchase of the portion of El Quinto as stated in the option contract. The option and the agreement to buy were both consummated. Parker acquired the two farms and the corporation bought from Parker 207 acres out of the farm El Quinto, about 70 acres, therefore, remaining in Parker. The formal deeds accomplishing this result are not in the record, but as found by the court below and not disputed, the matter was so arranged that the $25,875 due for the part of El Quinto bought by the corporation was made available for Parker so that he was enabled to use it as part of the $37,000 which under the option he was to pay for the purchase of the whole of El Quinto and Rio Hondo. It further appears from the opinion below that nothing was said in the deed to the corporation as to the right of way over the strip remaining of El Quinto, but at or about the time of the sale a deed was drawn by Parker and his wife giving to the corporation the right of way over Rio Hondo as provided in the option contract.

A controversy grew up between Parker and the corporation as to whether the corporation had not lost the right to the easement of way over the portion of El Quinto retained by Parker, and an attempt of the corporation to exercise the right of servitude was interfered with. This suit was then brought by the corporation and this appeal is prosecuted to obtain the reversal of a decree rendered in favor of the corporation directing the performance of the contract concerning the easement and preventing the interference with the enjoyment of such right.

It is apparent that the substantial controversy is a very narrow one, concerning only the easement of way over the small strip of the farm El Quinto remaining after carving out the portion of that farm bought by the corporation. And the contention as to the non-existence of

the right of way rests exclusively upon a challenge of the
validity of the contract as to the right between Parker and
the corporation.  The contention is that by virtue of the
purchase made from Henry of the two farms they became
acquéts of the community existing between Parker and
his wife, and as under the Porto Rican law the assent of
the wife to the disposal of real property of the community
was essential and such assent was not given by the wife,
Parker alone having been a party to the contract giving
the corporation the right of way, that contract was ab-
solutely void and not susceptible of being enforced.  But
the error lies in assuming that the property was commu-
nity property when the option contract was made in order
to measure its legality by such erroneous assumption.  On
the contrary when the contract made by Parker giving
the right of way was entered into the property belonged
to Henry and the only right possessed by the community
was that which might arise from the exercise by Parker,
the head and master of the community, of the option to
buy from Henry which he, Parker, had procured.  When
therefore before the exercise of the option Parker agreed
to the establishment of the right of way to attach to the
property when bought under his option, such contract
modified to that extent the right to buy conferred by the
option, or, in other words, submitted the exercise of the
option to a limitation which followed the property into
the hands of the community and diminished the estate
which it would otherwise have been entitled to under the
option.  Obviously from this it results that there was a
legal obligation on the part of the community to respect
and give effect to the right of way and that its refusal to
do so gave rise to the duty of exerting judicial power to
compel performance.  And the cogency of these conclu-
sions becomes additionally convincing when it is consid-
ered that there is no contention as to wrong against the
community resulting from the contract which gave to the

corporation a right to buy a part of the property covered by the option held by Parker especially when from the surrounding circumstances it is clearly to be deduced that the agreement to give to the corporation the right of way was one of the considerations by which it was led to consent to become a purchaser of part of the property which the option embraced, thereby in part at least affording the means by which Parker was enabled to acquire under the option the property which remained. The claim now made thus reduces itself to the contention that the right of the community to purchase under the option must be by it enjoyed free from the obligations inseparably resulting from its exertion; or, in another aspect, that the community having secured through its contract with the corporation the means to enable it to pay for the property which it acquired, can retain the property free from the obligation incurred in favor of the corporation.

There is a contention that the right to enforce the agreement to grant the servitude of way is barred by the limitation provided in § 4481 of the Porto Rican Code of 1913 (§ 1735 of the previous code). But on the face of the provision relied upon it is plainly applicable only to actions for lesion in cases of sale embraced by § 4480 of the same code, and has therefore no possible relation to the subject before us. So also there is a contention that the decree below was too broad since it enforced a perpetual easement instead of one depending upon the continued use of the property for the purposes for which the easement was created. But we think this contention is also wholly without merit because the decree when rightly interpreted is not susceptible of the extreme construction placed upon it.          -

*Affirmed.*