CARLOS BERROCAL FERRER ET UX, Petitioners, *v.* DISTRICT COURT OF PUERTO RICO, MAYAGÜEZ SECTION, ÁNGEL FIOL NEGRÓN, JUDGE, Respondent. FRANK FOURNIER, Intervener.

No. 1962. Argued April 7, 1953.—Decided June 30, 1953.

*A. Nazario Janer* for petitioners. *Enrique Báez García* for intervener, defendant in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

This case originated in the former Municipal Court of Puerto Rico, Mayagüez Section. On appeal, the District Court, Mayagüez Section, held a trial *de novo* under the Acts

then in force,[1] and entered judgment dismissing the complaint. On July 30, 1952, this Court granted certiorari to review the judgment thus rendered.

The findings of fact of the court *a quo*, which have not been challenged, are the following:

"1. The plaintiffs, Carlos Berrocal Ferrer and Daniela Sánchez, are husband and wife, over 21 years of age, and residents of Mayagüez, Puerto Rico; and the defendant, Frank Fournier, is over 21 years of age, married to Monserrate Rodríguez and likewise a resident of Mayagüez, Puerto Rico.

"2. The plaintiffs own an urban property described in the complaint as follows:

" 'Lot of 275 square meters, situated on Boulevard Santiago Veve Street, at the corner of Alameda Cristy. It is bounded on the north by the Veve Boulevard; on the south by a property of María Luisa Arcelay; on the east by a house belonging to the heirs of Bianchi; and on the west by the Alameda Cristy and Farragut School.'

"3. On June 9, 1945, by virtue of a private document subscribed before Notary Enrique Báez García, the plaintiffs leased to the defendant the above-described lot for a term of five years at a monthly rent of $30, payable in advance, and subject to the following special conditions:

"D. The parties hereto state that if prior to the expiration of the contract, that is, before the five-year period, Mr. Fournier should decide not to continue the lease, the latter shall be obliged to remove any construction he may have erected on the leased lot, leaving the said lot in the same condition in which he finds it at the beginning of the contract.

"E. The parties hereto likewise state that if after the five-year period the lessees (*sic*) should decide to construct any commercial building on this lot, they shall be obliged to give Mr. Fournier the opportunity to rent whichever construction may have been erected.

"F. Finally, the appearing parties state that Mr. Fournier is free to erect and make any improvements on the leased lot

---

[1] The complaint was filed in the Municipal Court in April 1951, and the case was decided on appeal on June 26, 1952, prior to the effectiveness of the present Judiciary Act.

provided they are in keeping with the progress and needs of the business.

"4. On July 2, 1945, by a private document subscribed before Notary Alfredo Arnaldo, Jr., the plaintiffs and the defendant added to the aforesaid lease contract the following 'Complementary Clauses':

"H. If at the expiration of the term fixed for this lease, that is, at the end of the five-year period previously stipulated, no agreement is reached as to a new lease, the lessee shall be obliged to withdraw, on his own account and with his own money, whatever buildings he may have constructed on the leased lot within half a year after the date of the expiration of the lease and the lessee shall be obliged to continue paying the same rent stipulated for the said lease, and this condition shall not be understood as an extension or renewal of the said contract.

"I. The lessors state that they have no intention of either selling the lot involved in this lease or of purchasing the buildings which the lessee may construct thereon and that this contract has been made so as to make the lot available to the lessee in order that he be able to build thereon, but subject to the obligation of removing whatever buildings he may erect thereon at the expiration of the contract entered into on June 9 or of any other which may subsequently be entered between them.

"J. This explanatory clause has been deemed necessary because the lessors have noticed that the lessee is making a concrete structure on the leased lot and the lessee should be specifically warned of this fact in order that he protect his interest as he may deem best.

"K. Upon delivering the lot, the lessee shall leave it completely free of any buildings he may have erected thereon, the ground must be levelled as it was when delivered to him, and free of any rubbish and materials, and he is hereby notified that should he fail to do so the lessors shall then undertake to do it and the lessee shall reimburse them the total cost of whatever work may be necessary in order to accomplish said purpose.

"5. Monserrate Rodríguez, who was already married to the defendant when the private documents mentioned in the preceding clauses numbered 3 and 4 were executed and subscribed, was not a party thereto and did not intervene in any manner whatsoever.

"6. In accordance with the lease contract of June 9, 1945, the defendant immediately began to erect a building of permanent construction, which was finished after the complementary document of July 2, 1945 was executed, making it of cement, and zinc roofed, which building he now occupies partly as a school supplies store and soda fountain and partly as his residence together with his wife and children. The building was constructed with money belonging to the conjugal partnership at a cost of over eight thousand dollars ($8,000).

"7. On June 5, 1950, the plaintiff Carlos Berrocal Ferrer notified the defendant in writing his intention not to renew the lease and requiring him to deliver the leased lot since he intended to 'withdraw it from the rental market' giving him until December 9, 1950 for said delivery. The defendant did not comply with said demand and in April 1951, (the day is not known) the plaintiffs brought this proceeding in the Municipal Court, Mayagüez Section, praying that the defendant be ordered to deliver the lot to the plaintiffs 'completely and totally free and unencumbered, and in the same condition as when it was delivered to him.' The defendant appealed from the judgment of eviction rendered by said court.

"8. The plaintiffs acquired the lot that was leased to the defendant prior to July 17, 1947, and they do not own in the city of Mayagüez any other business of the same or similar nature as the defendant's business."

In view of the foregoing findings, the lower court concluded that the plaintiffs are not entitled to the eviction sought, on the following grounds:

"(1) Because pursuant to § 12 of the Reasonable Rents Act (Act No. 464 of April 25, 1946, Sess. Laws, p. 1326, amended by Act No. 201 of May 14, 1948, Sess. Laws, p. 574) when the lease contract entered into by the parties hereto expired, the said contract was compulsorily extended by the lessors, for the periods fixed by § 1471 of the Civil Code and during the emergency declared by the Reasonable Rents Act. Therefore, the lessors could not obtain the eviction on the ground that the contract had expired.

"(2) That although § 12 A authorizes the lessor to refuse an extension in some cases, none of said exceptions—eight

in all—includes the ground of withdrawing a *lot* from the rental market. Specifically, the term 'commercial or business premises' of subdivision 7 of said Section does not include the case of lots on which commercial buildings belonging to different owners are located.'

"(3) The plaintiffs have their way clear to an action of accession in order to recover the premises or building constructed by the defendant on the leased lot upon reimbursing . . . the cost of the construction . . . Once they own the construction, they may exercise the rights which as such owners they may have, including the ejectment of the defendant in the cases permitted by the Reasonable Rents Act. Meanwhile, they cannot evict the defendant from the leased lot during the emergency declared in said Act.

"(4) On the other hand . . . the agreement as to the demolition and removal of the building erected by the defendant on the leased lot is neither valid nor binding because when the said agreement was entered into—complementary clauses of July 2, 1945—the construction had already been commenced and being conjugal property it could neither be sold, encumbered nor bound without the wife's consent. Sections 91 and 1313 of the Civil Code, 1930 ed. Therefore this stipulation is discarded as null and void, and since the building in question was made in good faith, eviction against defendant and his wife does not lie unless they are reimbursed with the cost of the building—materials and labor. But this is a question which must be decided or determined in an action of accession, and not in this action of unlawful detainer."

It is alleged by the petitioners that the lower court erred in all its conclusions of law, as herein set forth.

■■ The court *a quo* decided that since the lessee had built with the lessors consent, he was a builder in good faith and therefore plaintiffs should have filed an action of accession and not one of unlawful detainer. *Rivera* v. *Santiago,*

56 P.R.R. 361; *Carrasquillo* v. *Maldonado, Int.,* 56 P.R.R. 375; *Palermo* v. *District Court*, 58 P.R.R. 191; *Aybar* v. *Jiménez*, 60 P.R.R. 729. However, this principle is inapplicable, when there is a pact or agreement which determines the rights of the parties, and when the construction is erected or built on a lot belonging to another by virtue of an express agreement between the parties, the clauses of the contract should prevail to determine the rights and obligations of the parties. *Villamil* v. *Camacho*, 64 P.R.R. 782, 783; *Figueroa* v. *Rodríguez*, 68 P.R.R. 248, 252. In the case at bar the lessee agreed to remove from the leased lot, at his expense and at the expiration of the lease contract, whatever structures he might have constructed thereon. He thereby waived his right to be indemnified for the cost of the construction and rendered unnecessary an action of accession, the plaintiffs being entitled to recover the lot by means of an action of unlawful detainer. The contractual clause regarding the manner in which the leased lot had to be delivered had legal force between the parties. (Section 1044 of the Civil Code.)

 The trial court decided, however, that the pact or agreement above referred to was null and void, because, as it pointed out, "when the said agreement was entered into—complementary clauses of July 2, 1945—the construction had already been commenced, and because being conjugal property it could neither be sold, encumbered nor bound without the wife's consent."

Sections 91 and 1313 of our Civil Code provide the following:

"Section 91.—The husband shall be the administrator of the conjugal property, except when stipulated otherwise.

"The purchases made by the wife out of the conjugal property shall be valid when the said purchases comprise things or articles for the use of the family, in accordance with their social position.

"Nevertheless the real property belonging to the conjugal

community may not be alienated or burdened, such a transaction being null, except when affected with the mutual consent of both parties to the marriage.

"Section 1313.—Notwithstanding the power which the husband has as administrator he shall not have the power to give, to sell and to find for a consideration the real estate of the conjugal partnership, without the express consent of the wife.

"Every sale or agreement which the husband may make in respect to the said property in violation of this section and the other provisions of this Code, or in fraud of the wife shall be null and shall not prejudice her or her heirs."

The essential problem consists in determining whether an agreement to destroy or demolish a building belonging to the conjugal partnership is equivalent to an agreement to sell, encumber or bind such building, the validity of which requires the consent of the wife, or whether it rather constitutes an act of administration.

Under the Spanish Civil Code the husband had the authority and power to sell or bind for consideration the personal property of the conjugal partnership without the consent of the wife. 9 Manresa 630, 638, 5th ed. An identical principle prevailed under the Code Napoleon, 8 Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés*, Vol. 8, p. 572; *Garrozi* v. *Dastas*, 204 U. S. 64, 78. The restriction embodied in our Civil Code concerning the need for the wife's consent when real property of the conjugal partnership is sold or encumbered is an innovation in the basic system of Civil Law. Such limitation, being an exception, should not be extended judicially. *Cf. Ex parte Ramos*, 53 P.R.R. 354; *Vázquez* v. *Board of Trustees*, 59 P.R.R. 144; *Ingoldsby* v. *Juan*, 12 Cal. 564.

The authority of the husband to dispose of real property belonging to the conjugal partnership without the intervention of the wife has been preserved in Louisiana. Dart, Louisiana Civil Code, 1945 ed., p. 136, § 2404; 2 De Funiak, Principles of Community Property, p. 568. The same situation holds in Texas, although with certain limitations.

Texas, Revised Civil Statutes, 1936, § 4619, 2 De Funiak, *op. cit.*, 608; *McGrail* v. *Fields*, 203 P. 2d 1000. On the other hand, provisions similar to ours prevail in California, Arizona, Idaho, New Mexico and Washington. *Spreckels* v. *Spreckels*, 48 Pac. 228; *La Tourette* v. *La Tourette*, 137 Pac. 426; *Munger et al.* v. *Boardman*, 88 P. 2d 536; *Cook* v. *Stevens*, 77 P. 2d 1100; *Greer* v. *Frost*, 20 P. 2d 301; *Schofield* v. *Gold,* 225 Pac. 71; *Pendleton* v. *Brown*, 221 Pac. 213; *Strong* v. *Strong*, 140 P. 2d 386; *Vaughan* v. *Roberts*, 113 P. 2d 884; *Trimble* v. *Trimble*, 26 P. 2d 477; *Coppedge* v. *Leiser*, 229 P. 2d 977; *Thomas* v. *Stevens*, 203 P. 2d 597; *Stabbert* v. *Atlas Imperial Diesel Engine Co.*, 238 P. 2d 1212; *Geoghegan* v. *Dever*, 194 P. 2d 397; *Campbell* v. *Webber*, 188 P. 2d 130; *Arnett* v. *Reade*, 220 U. S. 311; 2 De Funiak, *op. cit.* 551, 583. As to the system prevailing in other states, see 2 De Funiak, *op. cit.* 574–580, 587–593, 594–598; 1948 Cumulative Supplement, 15–29. As to the recent development of that doctrine, see De Funiak "The New Community Property Jurisdictions", 22 Tulane L. Rev. 264.

Now, a sale is equivalent to a transfer, assignment or conveyance of property or rights, for a valuable or lucrative consideration. *Enciclopedia Jurídica Española*, Vol. 13, p. 565. *Cf. Santiago* v. *Rodríguez*, 72 P.R.R. 253; *Encarnación* v. *Salim*, 69 P.R.R. 715; *Méndez* v. *Registrar*, 68 P.R.R. 288; *Robles* v. *Guzmán*, 67 P.R.R. 671. As to the act of encumbering real estate, an encumbrance is equivalent to a limitation of the ownership or of some real right imposed on real property, the real rights constituting, in turn, an encumbrance on a property. *Enciclopedia Jurídica Española*, Vol. 17, p. 252. By virtue of the power to encumber, the owner may waive the right to exercise one or several of the powers entailed by ownership, transferring said right to a third party. Castán, *Derecho Civil Español*, Vol. 2, p. 78. The provision of § 1313 of our Civil Code that the husband shall not have the power "to bind for a consideration" the real estate of the conjugal partnership

without the consent of the wife, implies the prohibition to encumber or establish obligations "in rem" on community property, granting to another person real rights thereon *Cf. Torres* v. *Luiña*, 63 P.R.R. 102; *Morales* v. *Ceide*, 51 P.R.R. 25; *Parker* v. *Monroig*, 239 U. S. 83, Castán, *op. cit.*, 7, 10–17.

When the defendant bound himself in this case to demolish and remove the structure at the expiration of the lease contract, he did not bind himself to assign or convey real property or real rights to a third party or to establish or recognize real rights or limitations on the building on behalf of the lessors. Therefore, the agreement in question did not imply the sale of, or establishment of an encumbrance on, the structure, the consent of the wife, therefore, not being required. The agreement implied the obligation to return the thing in the same condition in which it was delivered. Section 1451 of the Civil Code. And it had the effect of subjecting to a resolutory term of five years the contractual right of the lessee to erect the building. 29 *Enciclopedia Jurídica Española*, 582 *et seq.*; § § 1078 to 1083 of the Civil Code; 2 Castán, *op. cit.* 510; 8 Manresa, *op. cit.*, Vol. 1, p. 371. The demolition of the building constituted an administrative act, within the powers of the husband which does not require the wife's consent. It is true that the destruction of the building might imply the loss of financial values, but such a loss is implied in every act of administration. The husband could have reasonably believed that the value of the use of the building and of the lot during five years compensated the loss of the building, but even if he did not act with all prudence when he performed that administrative act, that fact does not imply that the agreement is void where there was neither fraud nor the alienation of the immovable. *Cf. Garrozi* v. *Dastas, supra*. Since the agreement imposing on the defendant the obligation to remove, on his own account, the building at the expiration of the contract was valid, the defendant was not entitled to recover

the value of the cost of construction of the building, as a prerequisite to his ejectment. Therefore, unlawful detainer and not accession, lay. Since the parties stipulated that the facts alleged in the complaint are true, and it having been alleged that the plaintiffs intended, in good faith, to recover the lot in order to devote it to their own use, and to withdraw it from the rental market, the plaintiffs proved that they were entitled to evict the defendant. *Roselló Hnos.* v. *Figueroa* 74 P.R.R. 403; *Rivera* v. *R. Cobián Chinea & Co.*, 181 F. 2d 974. But plaintiffs may exercise this right with respect not only to buildings, but to lots as well.

The court *a quo* erred in rendering a judgment of dismissal. The judgment appealed from will be set aside and the case remanded to the Mayagüez Section of the Superior Court of Puerto Rico to enter judgment granting the complaint, with any proper pronouncement not inconsistent with this opinion.

Mr. Justice Belaval dissented.