José R. Ramos Mimoso, en representación de la Sociedad de Gananciales existente entre él y su esposa Violeta Toral, demandante y apelante, *v.* El Pueblo de Puerto Rico y Departamento del Interior, demandados y apelados.

Núm. 9876.—*Sometido:* Mayo 26, 1949. *Resuelto:* Noviembre 30, 1949.

*H. Ramos Mimoso,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco, A. Torres Braschi y Carlos J. Faure, Procuradores Generales Auxiliares,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Acogiéndose a la autorización para instar pleitos contra El Pueblo de Puerto Rico concedida por la Ley núm. 76 de 13 de abril de 1916 (pág. 155),(¹) el demandante radicó esta acción para reivindicar una parcela de terreno de 166 milésimas de cuerda que se describe en la demanda. Se alega que dicha parcela está incluída dentro de una finca rústica

---

(¹)El artículo 1 de la Ley núm. 76 de 13 de abril de 1916, según fué enmendado por la Ley núm. 11 de 18 de abril de 1928 (pág. 131), prescribe:

"Las Cortes de Distrito de Puerto Rico estarán autorizadas en lo sucesivo para admitir demandas contra El Pueblo de Puerto Rico, en los siguientes casos:

"(a) Acciones por daños y perjuicios.

"(b) Acciones para reivindicar propiedad inmueble o mueble o derechos sobre la misma, con o sin resarcimiento de perjuicios por retención de los mismos o por daños causados en dicha propiedad o por sus rentas y utilidades y para deslinde de fincas rústicas; *Disponiéndose,* que no se recobrarán dichos daños y perjuicios y las rentas y utilidades sobredichas que se hubieren ocasionado por El Pueblo de Puerto Rico con anterioridad a la fecha en que entable la acción."

El artículo 9 de la referida Ley núm. 76 de 1916 prescribe:

"Todas las acciones contra El Pueblo de Puerto Rico prescribirán, si el pleito no se principia dentro de un año después de originada la causa de acción; con excepción de las acciones que se refieran a propiedad inmueble, las cuales prescribirán a los dos años. Cualquier persona que tenga una reclamación contra El Pueblo de Puerto Rico por cualquier causa de acción que se origine con anterioridad a la vigencia de esta Ley presentará, dentro de un año después de dicha fecha, una petición a la Asamblea Legislativa de Puerto Rico solicitando autorización para entablar pleito por la mencionada reclamación en la forma provista en esta Ley, expresando la cantidad máxima de su reclamación, la fecha en que se alega haberse originado la causa de acción, y cualesquiera otros datos que una u otra Cámara de la Asamblea Legislativa pueda pedir."

compuesta de una cuerda con 66 centésimas de otra también descrita en la demanda y adquirida por el demandante por compra a Frank P. Hastings, por escritura de 27 de enero de 1945; que en la referida parcela el Departamento de lo Interior de Puerto Rico, allá para el año 1919, con permiso de un anterior dueño de la finca, construyó una casilla para peón caminero y cercó la parcela; que al adquirir el demandante la finca de una cuerda con 66 centésimas, requirió al Departamento de lo Interior para que le entregase la parcela que venía ocupando y éste rehusó entregarla alegando que la misma pertenecía a El Pueblo de Puerto Rico a título de permuta celebrada con don José Cestero Molina, anterior dueño de la finca.

El demandado negó que el demandante fuera dueño de la parcela en cuestión; alegó que la poseía a título de permuta como antes se ha dicho e interpuso las defensas especiales de prescripción de la acción; prescripción adquisitiva para el caso de que no prosperase su alegación de haberla adquirido por permuta, y finalmente, que la acción no se había interpuesto dentro del término de dos años fijado por el artículo 9 de la Ley núm. 76 de 1916.

▇ Fundamentando la sentencia que declaró sin lugar la demanda, la corte a quo se expresó así:

   · · ❋       ❋       ❋       ❋       ❋       ❋       ❋

"De la prueba aparece y estima la Corte que ello le fué probado a satisfacción, que la parcela objeto de este litigio ha estado en posesión de la parte demandada, en concepto de dueña, pública y notoriamente, por lo menos, desde el año 1919. Cuando los demandantes compraron una parcela de mayor extensión sabían que la parte demandada poseía y alegaba ser dueña de la parcela ahora objeto de este litigio.

"Los propios demandantes admiten en su prueba que El Pueblo de Puerto Rico tiene construída en esa parcela de terreno una casilla de caminero desde el año 1919 y para el año 1946, fecha de la radicación de esta demanda, El Pueblo, sin lugar a dudas, la poseía, ejercitando actos de dominio sobre la parcela a que se refiere esta acción por un período de unos 27 años.

"Según los términos de la Ley número 76 de 1916 en su sección 9, esta acción debió comenzarse muchos años antes de la fecha en que se radicó esta demanda.

"No cree la corte que la construcción de la casilla ni la posesión por parte de El Pueblo de Puerto Rico de la parcela de terreno fueran actos de mera tolerancia.

"Al declarar el propio Dr. José R. Ramos Mimoso dijo que cuando compró la finca mayor al señor Hastings, éste le informó que o compraba con la casilla y el terreno que tenía El Pueblo de Puerto Rico o no había negocio. Esta situación da a entender que el Dr. José R. Ramos Mimoso compró la finca mayor sin que comprara nunca la parcela que tiene el Gobierno y que es objeto de este litigio.

"Toda la prueba admitida ha convencido a la corte que la acción ejercitada por los demandantes está claramente prescrita. El Pueblo ha ejercitado actos públicos y notorios de dominio sobre el predio en litigio, por lo menos desde el año 1919 y sobre este predio construyó una caseta de concreto armado para vivienda de un empleado caminero.

"* &ast; &ast; &ast; &ast; &ast; &ast;".

Procederemos a examinar la prueba para determinar si sostiene las conclusiones a que llegó la corte inferior. De la declaración no contradicha de Rafael Cestero García aparece que su padre, José Cestero Molina, fué dueño de una finca de unas 400 cuerdas, de la cual formaba parte la parcela en controversia; que el testigo administraba los bienes de su padre y tuvo conocimiento de que el Departamento de lo Interior interesaba que aquél le permutase una pequeña parcela de terreno a orillas de la carretera número 2 por otro terreno de El Pueblo de Puerto Rico de igual superficie; que su padre no estaba inclinado a llevar a cabo la transacción, pero Enrique Umpierre, funcionario del Departamento de lo Interior entonces y cuñado del padre del testigo, gestionó con aquél que le permitiese levantar una casilla para peón caminero en los terrenos de su finca, sintiéndose su padre obligado a complacerlo; que el testigo fué personalmente con Umpierre y le señaló en la finca la parcela donde podía levantar la casilla; que la permuta nunca llegó a efectuarse ni su padre recibió parcela de terreno alguna de El Pueblo

de Puerto Rico a cambio de aquélla en que se construyó la casilla; que su padre, quien había fallecido mucho tiempo antes del juicio, nunca revocó el permiso concedido, toda vez que no necesitaba dicha parcela para la explotación de su finca.

De la prueba no aparece, como concluyó la corte, que cuando el demandante compró la parcela de 1 cuerda con 66 centésimas, supiera que el demandado alegaba ser dueño de la parcela de 166 milésimas de cuerda. Tampoco resulta de la declaración del demandante, como erróneamente concluyó la corte inferior, que la parcela de 166 milésimas de cuerda no estuviera incluída en la compra que hiciera el demandante a Hastings.[2] Y en cuanto a la negativa de Hastings de gestionar ante el Departamento de lo Interior el traslado de la casilla, no tiene el alcance que le ha dado la corte a quo. Lo que tal conducta indica es que Hastings prefería no vender la parcela de terreno si como condición a la venta tenía que practicar tales gestiones. Fué por ese motivo que el demandante se vió obligado a practicarlas ante el Comisionado de lo Interior, quien, como se expuso en la demanda, se negó a remover la casilla alegando que El Pueblo de Puerto Rico era dueño de la parcela en cuestión a título de permuta.

La prueba del demandado en forma alguna demostró que se hubiera perfeccionado el contrato de permuta. Sólo pre-

---

[2] Lo declarado por el demandante a este efecto fué lo siguiente:

"P.—Y en el precio que le pagó al Sr. Hastings, ¿le pagó por ese cercado? [se está refiriendo a la parcela de 0.166 cuerdas]. R.—Yo le compré todo el predio a él. P.—¿Le pagó específicamente por esos terrenos cercados? R.—Sí, señor. P.—¿Recuerda a cómo le pagó? R.—El precio fué $9,000 por toda la finca. P.¿Por el precio alzado? R.—Sí, señor, alzado." (Pág. 18, T. de E.)

"P.—Cuando usted compró que vió que estaba esa casilla allí en la finca, ¿no le pidió usted a Hastings que le sacara esa casilla de allí y dejara su finca libre de esa casilla? R.—Yo tenía necesidad en ese momento de no suspender ninguna transacción porque tenía que levantar un garage allí, y necesitaba parte del trozo del terreno de Hastings. P.—¿No se lo pidió entonces? R.—Yo se lo pedí y él me dijo que deshiciera el negocio y a mí no me convenía deshacer el negocio en ese momento. P.—¿Por esa actuación de Hastings tuvo que traer este pleito? R.—Sí, señor." (Pág. 27, T. de E.)

sentó evidencia consistente de cartas de funcionarios del Departamento de lo Interior, proponiéndole a José Cestero Molina la referida permuta e invitándole a que fuera por el Departamento de lo Interior para ultimar el negocio. Pero esas cartas nunca fueron contestadas por Cestero Molina, como lo comprueba la de 14 de abril de 1919, *Exhibit* 9 del demandado.([3]) Además, no hubo prueba en absoluto de que terreno alguno fuese entregado por El Pueblo de Puerto Rico a Cestero por concepto de la permuta, ni que se otorgara escritura formalizando el contrato, apareciendo toda la finca de una cuerda con 66 centésimas inscrita en el Registro de la Propiedad a nombre del demandante. Tampoco hubo evidencia de que Hastings en alguna ocasión revocara el permiso que había otorgado Cestero.([4])

A base de la prueba que tuvo ante sí la corte inferior, no acertamos a comprender cómo pudo concluir que el demandado adquirió la parcela de terreno en cuestión mediante la celebración de una permuta.

La defensa de prescripción adquisitiva ordinaria invocada por el demandado tampoco está sostenida por la prueba. Ya hemos visto que la permuta no llegó a cele-

---

([3])El Exhibit 9 del demandado es el siguiente:

"Abril 14 de 1919.—Señor: Por tercera vez nos dirigimos a Ud. sobre el asunto de la permuta de la parcela de terreno que El Pueblo de Puerto Rico posee en el barrio de Pueblo Viejo por una de su propiedad en el mismo barrio.

"En nuestra primera comunicación Núm. 12–07/537, fechada febrero 24, 1919, le indicábamos el sitio de su finca en que aceptaríamos un predio de igual área que la de la parcela del Pueblo de Puerto Rico, cuyo sitio es en el empalme de la carretera a Guaynabo con la de Bayamón, y al no recibir su contestación posteriormente (en marzo 31) se le recordaba la anterior comunicación que tampoco ha contestado.

"Como este asunto se desea resolver se le informa que si el próximo lunes, día 21 del mes en curso, no tenemos noticias de Ud. sobre el asunto, se le ordenará levantar las cercas puestas por Ud. y el deslinde de la parcela del Pueblo de Puerto Rico.—Atentamente, (Hay dos iniciales) Comisionado. Sr. José Cestero, Bayamón."

([4])En la fecha del juicio, según aparece de la prueba del demandante, Hastings había sufrido un derrame cerebral que le impedía asistir a la corte y el demandante solicitó que el caso se dejara abierto para tomarle declaración, pero no aparece de la prueba que en alguna forma declarase este testigo.

brarse. En consecuencia, suponiendo a los efectos del argumento que la posesión del demandado hubiera sido en concepto de dueño, faltaría el requisito indispensable del justo título. Artículo 1857 del Código Civil.

Tratándose de una acción contra El Pueblo de Puerto Rico sobre reivindicación de inmuebles, no es necesario discutir si la acción había prescrito de acuerdo con el artículo 1863 del Código Civil. Esto es así, porque de conformidad con el artículo 9 de la Ley núm. 76 de 1916, El Pueblo de Puerto Rico, al prestar su consentimiento para ser demandado, impuso la condición de que acciones como la del presente caso, deberían establecerse dentro del término de dos años de originada la causa de acción. Precisa, por consiguiente, determinar si la acción fué establecida dentro del término fijado por la referida Ley.

No procede esta defensa porque, como hemos visto, la prueba demuestra que la posesión del demandado no era en concepto de dueño, sino por permiso y tolerancia del anterior dueño José Cestero Molina, permiso y tolerancia que persistió cuando el causante inmediato del demandante, Frank P. Hastings, adquirió la parcela, de la cual segregó la de una cuerda con 66 centésimas, que vendió al demandante. Empezó a correr la prescripción de acuerdo con la evidencia, cuando el demandante requirió a El Pueblo de Puerto Rico en el año 1945 para que le entregase la parcela de 166 milésimas de cuerda, y la entrega fué rehusada, alegando por primera vez El Pueblo de Puerto Rico que era dueño del terreno en cuestión. Fué desde el instante en que el demandado exteriorizó por primera vez que su posesión era en concepto de dueño, que surgió la causa de acción para reivindicar, y es desde ese momento en que empieza a contarse el término de dos años que fijó la Ley núm. 76 de 1916. Habiéndose radicado la demanda el 3 de mayo de 1946, claro es que entonces no habían transcurrido los dos años fijados por el artículo 9 para establecer la acción.

No estando en controversia el hecho de que la casilla pertenece a El Pueblo de Puerto Rico y que ésta fué construída de buena fe a virtud del permiso que se le concedió, el demandado tiene derecho a que como condición previa a la entrega de la parcela, se le pague el importe de los materiales invertidos en la construcción de la casilla, así como el montante de la mano de obra. *Rivera* v. *Santiago,* 56 D.P.R. 381 y *García* v. *Stella,* 69 D.P.R. 977.

*Por consiguiente, procede revocar la sentencia apelada y devolver el caso a la corte inferior para que reciba evidencia exclusivamente sobre el importe de los materiales invertidos en la construcción de la casilla, así como el montante de la mano de obra, hecho lo cual dictará sentencia consistente con los principios enunciados en esta opinión.*

El Juez Asociado Sr. Negrón Fernández se inhibió.