TEXTO COMPLETO DE LA SENTENCIA
Comparece ante este Foro la parte apelante, Sr. Félix Oropeza Ramos, y nos solicita la revocación de la Sentencia emitida el 18 de abril de 2008, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. La *1022 referida Sentencia da por desistida una reclamación de desahucio y declara Ha Lugar la reconvención a los únicos fines de declarar nula una transacción de compraventa y ordenar la devolución de las contraprestaciones, más intereses desde la presentación de la demanda y las costas del pleito.
Basándonos en el examen del expediente y en el derecho vigente que expondremos a continuación, REVOCAMOS la Sentencia apelada.
I
En el año 1971, el Sr. Félix Oropeza Ramos le compró a la Sra. Petra Rodríguez Pérez un solar por setecientos dólares ($700). Las colindancias del terreno se establecieron verbalmente y luego de tres años, el 26 de septiembre de 1973, el contrato fue redactado en documento privado.
El contrato privado decía así:

“26 de septiembre de 1973

Yo, Petra Rodríguez Pérez, bajo la cabalidad de mi pleno juicio y con el consentimiento de mis hijos, vendí al señor Félix Oropeza la cantidad de quinientos (500) metros de terreno por la cantidad de setecientos ($700) dólares.

El terreno arriba mencionado quedaba parte de nuestra finca localizada en el Barrio Contorno de Toa Alta, y ala misma vez a orillas del camino vecinal, con guardarrayas por el norte y el oeste con nuestra finca.

Hago constar que desde este momento, el señor Félix Oropeza es el único y verdadero dueño de estos quinientos (500) metros de terreno. ”

El 20 de noviembre de 1981, la demandante Sra. Petra Rodríguez Pérez exigió judicialmente que el demandado Sr. Félix Oropeza Ramos moviera su casa del predio de terreno donde éste la había construido a otro seleccionado por la demandante. En la Sentencia del 3 de marzo de 1983, civil número 81-4695 (501), así se dispone, que el demandado moviera su casa al solar mesurado y la ubicara dentro de los límites establecidos por doña Petra Rodríguez.
En noviembre de 1980, el Ing. José M. Arroyo había levantado un plano del solar vendido, a instancias de doña Petra, el cual le fue entregado a don Félix Oropeza por el hijo de doña Petra, Rafael Rodríguez Rodríguez. En dicho plano, los linderos del solar se señalaron así: un área de 500 m.c. en lindes por el Norte y Oeste con la finca principal, por el Este con camino vecinal y por el Sur con Carlos Rivera.
No obstante, los linderos descritos en ese plano fueron alterados por el Tribunal de Primera Instancia en el 1983. En dicha Sentencia de 3 de marzo de 1983 se estableció que “hubo contradicción en los testimonios en cuanto a los linderos establecidos verbalmente cuando la venta. La demandante testificó que le señaló del palo de tamarindo al de aguacate y de allí hasta la colindancia ...el tribunal dio credibilidad al testimonio de la demandante en cuanto a los linderos, ya que se aceptó por el demandado que fue él quien solicitó la venta del solar y la demandante no se dedicaba a vender solares ...el camino vecinal termina en el portón de la entrada a la casa de la demandante, por lo que de los linderos alegados por el demandado utilizaría todo el frente de la finca al camino vecinal, lo que invalidaría el resto de ésta .... En tal virtud ordena a los demandados, don Félix Oropeza y doña María Angélica Vázquez, para que dentro de un término no mayor de sesenta (60) días desde la notificación de esta Sentencia remueva la casa al solar mensurado y la ubique dentro de los límites establecidos. ”
El demandado, señor Oropeza, desmontó la casa de madera; sin embargo, gran parte de los materiales se *1023 perdieron, razón por la cual no pudo construir nuevamente su casa en el solar establecido. Luego de esto, el señor Oropeza se fue a los Estados Unidos y su familia se dispersó.
El señor Oropeza encargó a su hijo que visitara regularmente la finca y limpiara el solar. Para el 1989, el hijo del señor Oropeza le informó que habían plantado un poste de la Autoridad de Energía Eléctrica (AEE) en el centro del solar. Por esta razón, en 1989, el señor Oropeza vino a Puerto Rico a realizar gestiones para que la AEE mudara el poste de lugar. Luego de múltiples trámites, la AEE mudó el poste en 1992 y el señor Oropeza permaneció en Puerto Rico porque, alegadamente, había perdido su empleo en Estados Unidos por mantenerse en Puerto Rico para resolver la situación con la Autoridad de Energía Eléctrica.
Las hojas de órdenes de inspección de la AEE indican que el señor Oropeza visitó las oficinas de la AEE en varias ocasiones en 1990, 1991 y 1992 para “remoción” de líneas y “verificación de estatus de poste primario en su propiedad”.
Para finales del año 2002 y principios del 2003, el señor Oropeza, estando en Puerto Rico, comenzó a construir en su solar y como parte de las gestiones solicitó los correspondientes permisos de construcción. En la Administración de Reglamentos y Permisos (ARPE) le dijeron que para continuar con los procedimientos de rigor necesitaba un Ingeniero Agrimensor y el permiso de Petra Rodríguez Pérez.
El agrimensor William R. Torres Ramírez, en carta de 17 de marzo de 2003 al señor Oropeza, le comunicó lo siguiente:

“1. El punto principal, el cual es un árbol de tamarindo, es físicamente existente comprendiendo la colindando Este en una distancia de 12.50 metros lineal, de Norte a Sur terminando en un tubo existente, lo cual sale correcto, de acuerdo al plano de mesura elaborado por el Ingeniero graduado José M. Arroyo, Lie. Núm. 8009.

2. La construcción de la estructura está localizada correctamente dentro de los límites de su propiedad, según plano de mensura elaborado por el Ingeniero graduado, José M. Arroyo, Lie. 8009, a petición de la Sucn. Valentín Rodríguez. Rolón, la heredera universal Sra. Petra Rodríguez con fecha de 25 de noviembre de 1980. ”

No obstante, le indico que deberá sacar los permisos de construcción pertinentes al respecto y, además, solicitar la debida segregación del solar ante las agencias gubernamentales correspondientes para que pueda preparar su escritura de inscripción aparte. Es necesario que la Sra. Petra Rodríguez Pérez me firme las dos autorizaciones para la radicación de los planos de segregación y de construcción, ya que ella es la heredera universal de Don Valentín Rodríguez Rolón, según investigaciones al respecto.
Durante el 2002-2003, el señor Oropeza, en vías de construir nuevamente la casa, buscó una máquina, replanteó el terreno, hizo un pozo muro y construyó un muro de contención. Fue entonces cuando el hijo de doña Petra presentó las acciones contra él.
Preparó, entonces, unos papeles para que la Sra. Petra Rodríguez autorizara al Ingeniero a medir y continuar las construcciones, pero la señora Petra le dijo que no podía firmar porque su hijo le había dicho que no firmara ningún papel.
Así las cosas, el 26 de marzo de 2003, el Sr. Rafael Rodríguez, hijo de la demandante Sra. Petra Rodríguez, presentó una denuncia contra el señor Oropeza por el delito de usurpación. Luego de escuchar el testimonio y presentación de evidencia, el Tribunal determinó que no existía causa probable.
Ese mismo día, el 26 de marzo de 2003, se emplazó a la parte demandada, señor Oropeza, con copia de la Demanda del caso que nos ocupa, sobre desahucio. Luego de varios trámites procesales, en vista del 13 de *1024 noviembre de 2006, la parte demandante, Sra. Petra Rodríguez, representada por su hijo, informó que había desistido de la acción de desahucio. Quedaba pendiente la reconvención instada por el Sr. Félix Oropeza Ramos.
El 3 de noviembre, la parte demandada-apelante, señor Oropeza, enmendó las alegaciones y expuso que la parte demandante-apelada había iniciado y completado un procedimiento de Expediente de Dominio sin incluirlo a él como titular de una participación indivisa del inmueble y que esta acción fraudulenta le había ocasionado y continúa ocasionándole daños emocionales y morales.
Luego de celebrarse el juicio en su fondo, el 18 de abril de 2008, el Tribunal de Primera Instancia emitió Sentencia en la que determinó que se tenía por desistida la reclamación de desahucio. No obstante, declaró nula la transacción del negocio de compraventa y ordenó la devolución de las contraprestaciones más los intereses desde la presentación de la demanda y las costas del pleito. Decretó lo anterior debido a que el solar comprado no estaba segregado y porque el negocio efectuado entre las partes no constaba en documento público. Basó su determinación en el Artículo 1232 del Código Civil, 31 LPRA § 3452, que dispone que deberán constar en documento público los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles, así como en el Artículo 1179, 31 LPRA § 3280, que dispone que el documento privado, reconocido legalmente, tendrá el mismo valor que la escritura pública entre los que hubieren descrito y sus causahabientes. El tribunal razonó' que el señor Oropeza tenía que saber que para construir su casa requería de permiso y que el permiso sólo lo obtendría si el terreno estaba segregado. Determinó que la vendedora nunca se comprometió a segregar.
Inconforme ante la determinación del Tribunal de Primera Instancia, el demandado-apelante presentó el 12 de mayo de 2008 una Moción de Reconsideración, la cual fue declarada No Ha Lugar por el foro apelado.
Aún inconforme, el apelante comparece ante este Tribunal e imputa al foro de instancia errar al declarar nula la transacción de compraventa entre las partes y sólo reconocerle al demandado derecho a que se le devuelvan los $700 pagados por el terreno hace 37 años, además, de no reconocer los daños emocionales y morales sufridos por el demandado.
Contando con la comparecencia de la parte apelada, estamos en posición de resolver.
II
En todo proceso adjudicativo, sea de naturaleza judicial, civil, administrativa o de cualquier otra índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. Isla Verde v. García, 165 DPR 499, 505 (2005); Valentín v. Municipio de Añasco, 145 DPR 887, 897 (1998); Berríos v. UPR, 116 DPR 88, 94 (1985).
La teorí a de los contratos
Los contratos constituyen una de varias formas en que .las personas pueden obligarse entre sí. Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, 150 DPR 571 (2000); Santiago v. ACAA, 119 DPR 711, 716 (1987).
El Código Civil de Puerto Rico, en su Artículo 1206, 31 LPRA § 3371, nos explica que los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. En nuestro ordenamiento jurídico, la teoría de los contratos se fundamenta en la autonomía de la voluntad contractual y entiende que los contratos son ley entre las partes, las cuales tienen que acatar lo estipulado, salvo que sea contrario a la ley, la moral o el orden público. Id.; Vélez López v. Izquierdo Stella, 162 DPR 88 (2004); Trinidad v. Chade, 153 DPR 280 (2001); Banco Bilbao Vizcaya v. Mun. Vega Baja, *1025 154 DPR 53(2001); S.L.G. Irizarry v. S.L.G. García, 155 DPR 713 (2001); De Jesús González v. Autoridad de Carreteras, 148 DPR 255 (1999).
Los efectos de los acuerdos contractuales, en cuanto a las partes contratantes, están dispuestos, entre otros, en los Arts. 1207, 1209, 1230 y 1231 del Código Civil, 31 LPRA §§ 3372, 3374, 3451 y 3452, los cuales disponen como sigue:
“Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni el orden público; Los contratos sólo producen efecto entre las partes que los otorgan y sus herederos; Los contratos serán obligatorios cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. (Enfasis suplido.); Si la ley exigiere el otorgamiento de escritura u otra forma especial para hacer efectivas las obligaciones propias de un contrato, los contratantes podrán compelerse recíprocamente a llenar aquella forma desde que hubiese intervenido el consentimiento y demás requisitos necesarios para su validez. ” (Énfasis suplido.)
El Artículo 1232 del Código Civil, 31 LPRA § 3453, provee para los contratos que deben constar en documento público, disponiendo que “[djeberán constar en documento público: (1) Los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles. ” Ahora bien, este artículo no priva de validez y eficacia los actos que no consten en instrumento público. Como nos explica el tratadista Puig Brutau comentando el Artículo 1.280 del Código Civil Español, equivalente al Artículo 1232 del Código Civil de Puerto Rico:
“Los contratos son válidos por regla general «cualquiera que sea la forma en que se hayan celebrado» (Art. 1.278); pero, no obstante, si se trata de alguno de los que enumera el Art. 1.280, los contratantes podrán «compelerse recíprocamente a llenar aquella forma» prescrita. En consecuencia, los contratos enumerados en el Art. 1.280 son válidos en todo caso entre los contratantes, sin perjuicio de que estos puedan compelerse a otorgar el documento a que se refiere el mismo artículo. ... Con la interpretación dominante, el Art. 1.280 queda limitado a ser una lista de actos que el legislador considera que deben constar en documento público a petición de una de las partes contratantes. Generalmente se dice que los requisitos de forma que exige este artículo son meramente ad probationem, en contraposición a los que se exigen en algunos casos concretos, que exigen la forma como requisito ad solemnitatem o de manera indispensable para la misma perfección del contrato. Pero no se trata de que dicha forma ad probationem sea la única admitida para probar la existencia del contrato del que se trate. ” (Énfasis suplido y en el original.)
José Puig Brutau, Compendio de Derecho Civil, 2da. Ed., Barcelona, Editorial BOSH, S.A., 1994, Volumen II, a las págs. 208-209. Por su parte, el tratadista José María Manresa y Navarro comenta que:
“Reuniendo el contrato todas las condiciones necesarias para su validez, la falta de escritura no obsta a la eficacia del mismo, pues lo prevenido en el Artículo 1.280 según reiterada jurisprudencia del Tribunal Supremo, no tiene otro alcance que el poderse compeler los contratantes a elevar el contrato a escritura. ... Según el Artículo 1.279 del Código civil (Artículo 1231 del Código Civil de Puerto Rico), en el supuesto de que no se hubiera llenado la forma seguida por ley, sólo están autorizadas las partes a compelerse recíprocamente a llenar aquella forma, nunca para solicitar la inexistencia del contrato. ... Con arreglo a constante jurisprudencia la falta de escritura pública, de acuerdo con lo establecido en el Artículo 1.270 del Código civil (Artículo 1222 del Código Civil de Puerto Rico), no obsta la eficacia del contrato para su validez.” (Énfasis suplido.)
José María Manresa y Navarro, Comentarios al Código Civil Español, 6ta. Ed., Madrid, Editorial Reus, S.A., 1967, Tomo VIII, págs. 670 y 671.
*1026 Por su parte, en el contrato de compraventa, uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente. Art. 1334 del Código Civil, 31 LPRA § 3741. Este contrato se perfecciona cuando el comprador y el vendedor acuerdan la cosa objeto del contrato y el precio, aunque ni la una ni la otra se hayan entregado. (Énfasis suplido.) Art. 1339 del Código Civil, 31 LPRA §. 3746.
En cuanto la interpretación de los contratos que tienen como objeto la creación de un derecho real, José Castán Tobeñas expresa que “la exigencia deforma escrita para los actos y contratos que tengan por objeto la creación de derechos reales sobre bienes inmuebles, no tiene el alcance deforma solemne, que pudiera afectar a la eficacia obligatoria del contrato, sino simplemente el de reconocimiento de la facultad de compelerse recíprocamente los contratantes a llenar la forma escrita.” (Énfasis en el original.) José Castán Tobeñas, Derecho Civil Español, Común y Foral, 15va. Ed., Madrid, Editorial Reus, S.A., 1994, Tomo II, Vol, II, págs. 168 y 169.
Sabido es que en nuestro ordenamiento jurídico prevalece la teoría del título y modo para determinar cuándo una persona traslada su derecho de dominio a otra. En Maeso v. The Chase Manhattan Bank, 133 DPR 196, 201 (1993), nuestro más alto Foro expresó lo siguiente:

“[...] Se denomina ‘título' al 'fundamento o causa jurídica de la adquisición”, mientras que "modo" se refiere a "la transferencia de la posesión del objeto de la adquisición. Esa transferencia no es otra cosa que la tradición. En sentido corriente, la tradición se refiere a un hecho físico como lo es la entrega de la cosa. La nomenclatura del derecho civil trasciende ese significado y se emplea para señalar un efecto jurídico: la entrega de la posesión con ánimo de transmitir la propiedad. ”

El Código Civil, en su Artículo 1351, 31 LPRA § 3811, alude a dos de las formas en las que se puede asumir la tradición, modo o entrega. Estas formas son: la real y la instrumental. En la tradición instrumental, el otorgamiento de la escritura equivale a la entrega. Por otro lado, la tradición real “consiste en un cambio de posesión por entrega de la cosa por parte del tradens al accipiens. La cosa se desplaza físicamente y al desplazamiento acompaña la intención de las partes de que se desplace el derecho sobre la misma en virtud de una causa o razón jurídica suficiente.” José Puig Brutau, Fundamentos de Derecho Civil, Tomo III, Vol. I, 4ta. Ed., Bosch, Barcelona, 1994, a la pág. 315. El Artículo 1351, 31 LPRA § 3811, hace referencia a este tipo de tradición cuando dispone que “[s]e entenderá entregada la cosa vendida cuando se ponga en poder y posesión del comprador. ” En la tradición, el adquirente queda en la situación de dominar físicamente la cosa de manera equivalente a lo que sucede en el caso de entrega de una cosa que puede pasar de manos del vendedor a las del comprador. Id. Entre varios tipos de tradición o entrega, se encuentra la tradición para la venta de una finca, denominada como longa manu, que consiste en que el enajenante le enseña o pone de manifiesto al adquirente y éste queda en la posibilidad de ocuparla. Id., a la pág. 316.
El derecho real es aquél que “ofrece la característica de recaer de manera directa e inmediata sobre un objeto. ” Id., a la pág. 6. El derecho real también tiene la característica de ser erga omnes, en el sentido de que puede hacerse valer contra todos. Como nos explica el tratadista Puig Brutau, “los derechos reales pueden permitir dicha actuación directa e inmediata gracias a que imponen a todos los no titulares el deber jurídico de respetar el ejercicio del derecho. ” Id.
Uno de los derechos reales enumerados en nuestro Código Civil es el derecho de propiedad o dominio. El Artículo 280 del Código Civil, 31 LPRA § lili, dispone que “fija propiedad es el derecho en virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra. La propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes. ”
*1027 La prescripción adquisitiva
En cuanto a los modos de adquirir un derecho de propiedad, el Artículo 549 del Código Civil de Puerto Rico, 31 LPRA § 1931, estatuye lo siguiente: “La propiedad se adquiere por la ocupación. La propiedad y los demás derechos sobre los bienes, se adquieren y transmiten por la ley, por donación, por sucesión, testada e intestada y, por consecuencia, de ciertos contratos mediante la tradición. Puede también adquirirse por medio de la prescripción. ”
El Artículo 1830 del Código Civil de Puerto Rico, 31 LPRA § 5241, establece que “[p]or la prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y los demás derechos reales. También se extinguen del propio modo por la prescripción los derechos y las acciones, de cualquier clase que sean. ” Silva Wiscovich v. Weber Dental Mfg. Co., 119 DPR 550, 554 (1987).
Según el tratadista Puig Brutau, la prescripción adquisitiva o usucapión es la adquisición del dominio o de los derechos reales por medio de la posesión como dueño o de titular de derecho durante el tiempo que determina la ley. Puig Brutau, Vol. I, supra, a la pág. 326.
En cuanto a la prescripción adquisitiva, la doctrina distingue entre la ordinaria y la extraordinaria. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Tomo XXV, Vol. 1, EDERSA, Madrid, 1993, a las págs. 243-244. Para la prescripción adquisitiva ordinaria se requiere la concurrencia de buena fe y justo título junto al transcurso de un tiempo fijado por ley. Art. 1857 del Código Civil, 31 LPRA § 5278.
Por un lado, la buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella y que podía transmitir su dominio. Art. 1850 del Código Civil, 31 LPRA § 5271; Ramos v. Ríos, 79 DPR 738, 740-741 (1956); Rivera v. Meléndez, 72 DPR 432, 440 (1951).
Por otro lado, cuando se habla de justo título se contempla que el poseedor haya adquirido esa posesión a través de un negocio jurídico mediante el cual normalmente se traspasa la titularidad. No se toma en consideración si el transmitente es o no en verdad el dueño. El Código Civil de Puerto Rico, en su Artículo 1852, 31 LPRA § 5273, establece la definición de justo título: "Entiéndase por justo título, el que legalmente baste para transmitir el dominio o derecho real de cuya prescripción se trate." Sin embargo, “¡piara que el título sea justo no es necesario que de hecho transfiera el dominio o derecho real; sino que sea suficiente para transferirlos, aunque adolezca de un vicio que lo invalide.” (Enfasis en el original.) Martorell et. al. v. Ochoa, 25 DPR 759, 763-764 (1975). Sobre el particular, Puig Brutau nos explica que:
“La usucapión ordinaria o breve ha de fundarse en una entrega que corresponda a un título de los que normalmente sirven para transmitir la propiedad (v.g. compraventa o donación), pero quedan excluidos los que no tienen esta posibilidad (v.g. comodato o depósito), por no tratarse de negocios jurídicos que produzcan una transmisión dominical. Por supuesto que el título, a pesar de ser idóneo, no habrá podido cumplir con su normal finalidad por la concurrencia de algún defecto que la usucapión subsanará. ” Puig Brutau, Vol. I supra, a la pág. 340.
El justo título no se presume nunca, sino que debe probarse. Art. 1854 del Código Civil, 31 L.P.R.A. § 5275. El título, además, ha de ser verdadero y válido. Art. 1853 del Código Civil, 31 LPRA § 5274; Ramos v. Pueblo, 70 DPR 619, 625 (1949). Lo anterior no significa, sin embargo, que el título deba ser perfecto. Ramírez v. Ramírez, 65 DPR 544, 551 (1946). En cuanto al requisito de título verdadero, se analiza en el sentido de que el acto o negocio jurídico haya tenido existencia real, con independencia de los defectos que adolezca. Puig Brutau, Vo. I, supra, a la pág. 340.
En relación a la prescripción adquisitiva ordinaria, el dominio y demás derechos reales pueden ser *1028 adquiridos por la posesión durante 10 años, entre presentes y de 20 años, entre ausentes. Art. 1857 del Código Civil de Puerto Rico, 31 LPRA § 5278. Sucn. Tirado v. Supreme Broad. Co., Inc., 98 DPR 899, 905 (1970); Quiñones Quiñones v. Quiñones Irizarry, 91 DPR 225, 290-291 (1964).
Cuando no se cumple con los requisitos anteriores, una persona todavía puede adquirir el dominio y demás derechos reales sobre un inmueble mediante la prescripción adquisitiva extraordinaria, que consiste en la posesión no interrumpida del bien o derecho durante 30 años, sin necesidad de título ni de buena fe y sin distinción entre presentes y ausentes. Art. 1859 del Código Civil, 31 LPRA § 5280; Sucn. Maldonado v. Sucn. Maldonado, 166 DPR 154; Sucn. Tirado v. Supreme Broad. Co., Inc., 98 DPR 899, 905; Nazario García v. Almodovar Horrach, 94 DPR 517, 526-527; Quiñones Quiñones v. Quiñones Irizarry, 91 DPR 225, 290-291; Dávila v. Cordova, 77 DPR 136, 140 (1954).
Ahora bien, es propio aclarar que ambas clases de prescripción adquisitiva exigen una posesión continuada o ininterrumpida, pública, pacífica y en concepto de dueño durante el plazo estatuido en la ley. Art. 1841 del Código Civil, 31 LPRA § 5262; Sucn. Maldonado v. Sucn. Maldonado, 166 DPR 154 (2005); Sánchez González v. Registrador, 106 DPR 361, 375 (1977). De ahí que un precarista esté impedido de adquirir el dominio de un inmueble mediante prescripción adquisitiva. Nazario García v. Almodóvar Horrach, 94 DPR 517, 526-527 (1967); García v. De Jesús, 79 DPR 147, 153 (1956); Rivera v. Santiago, 56 DPR 381, 385 (1940).
El ordenamiento jurídico exige que la posesión para la prescripción adquisitiva sea en concepto de dueño, porque sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para adquirir el dominio. Art. 376, 31 LPRA § 1462; Puig Brutau, Vol. 1, supra, a la pág. 331. La norma vigente sostiene que los actos de carácter posesorio ejecutados por mera tolerancia del dueño no son suficientes para la prescripción adquisitiva. Art. 1842 del Código Civil, 31 LPRA § 5263; Puig Brutau, Id.
La posesión pública priva de eficacia posesoria los actos ejecutados clandestinamente y el requisito de forma pacífica es para enfatizar que la posesión no se haya adquirido violentamente. El requisito de posesión no interrumpida o continua se refiere a que la posesión en carácter de dueño tenga un efecto de continuidad durante el tiempo establecido por la ley. Puig Brutau, Vol. 1, supra, a las págs. 333-334. Se presume que la posesión se sigue disfrutando en el mismo concepto en que se adquirió. Art. 365 del Código Civil de Puerto Rico, 31 LPRA § 1426.
La posesión puede ser interrumpida naturalmente cuando cesa por cualquier causa por un período de más de un año. Art. 1844 del Código Civil, 31 LPRA § 5265, o civilmente, cuando se presenta una reclamación judicial contra el poseedor. Art. 1845 del Código Civil, 31 LPRA § 5266; Sucn. Carrera Cancel v. Sucn. Castillo, 105 DPR 691, 695 (1977). Aunque se considera que la interrupción civil no ha tenido lugar cuando, entre otras circunstancias, “el poseedor fuere absuelto en la demanda.” Art. 1846, 31 LPRA § 5267; Sucn. Rosa v. Sucn. Jiménez, 77 DPR 551, 558-561 (1954); Ex Parte Reyes, 68 DPR 854, 857 (1948). La posesión se interrumpe, además, por cualquier reconocimiento expreso o tácito que el poseedor hiciere del derecho del dueño. Art. 1848 del Código Civil, 31 LPRA § 5269; Carrera Cancel v. Sucesión Castillo, 105 DPR 691, 695 (1977).
En síntesis, el efecto esencial de la prescripción adquisitiva o usucapión es la adquisición del dominio. Art. 1830 del Código Civil, 31 LPRA § 5241; Puig Brutau, Vol. I, supra, a la pág. 342. La doctrina sostiene que la usucapión adquiere eficacia retroactiva, esto es, al momento en que el usucapiente inició la posesión con sus necesarios requisitos. Por otro lado, los actos realizados por el poseedor anterior quedan resueltos. Puig Brutau, supra, a la pág. 342.
La apreciación de la prueba
Por otro lado, es norma bien arraigada en nuestro derecho que la apreciación de la prueba realizada por los *1029 tribunales de primera instancia debe ser objeto de deferencia por los tribunales apelativos. Mun. de Ponce v. A. C. et al., 153 D.P.R. 1, 27 (2001); Trinidad v. Chade, 153 DPR 280, 291 (2001). Como norma general, los tribunales apelativos no intervendremos con la apreciación de la prueba que haga el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Monitor v. Soc. de Gananciales, 138 DPR 600, 610 (1995); Pueblo v. Lorio Ormsby I, 137 DPR 722, 730 (1994); Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. Ill, R. 43.2. No obstante, la norma expresada no implica que los tribunales de instancia sean inmunes a cometer errores, ni que sus determinaciones de hechos sean irrefutables. Siempre existe, aunque por vía de excepción, la posibilidad de que dichas determinaciones sean descartadas por el foro apelativo por no ser éstas razonablemente representativas de la prueba que desfiló ante el foro de instancia. Una apreciación efrónea de la prueba no tiene credenciales de inmunidad ante la función revisora de este Tribunal. Méndez v. Morales, 142 DPR 26, 36(1996).
Aun cuando exista alguna evidencia que sostenga las conclusiones de hechos del foro sentenciador, su apreciación de la prueba será considerada errónea por el foro apelativo si de un análisis de la totalidad de la misma queda demostrado que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Abudo Servera v. A.T.P.R., 105 DPR 728, 731 (1977).
Además, los tribunales apelativos están en igual posición para evaluar prueba pericial y documental ofrecida en el caso y hacer sus propias conclusiones o determinaciones. Arrieta v. De la Vega, 165 DPR 538, 551 (2005); López, v. Dr. Cañizares, 163 DPR 119, 135 (2004).
Concesión del remedio adecuado
Por último, en cuanto al remedio a concederse, la Regla 43.6 de Procedimiento Civil establece que “toda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones.” Dicha Regla atiende el principio de hacer justicia a la luz de los hechos de cada caso y del derecho aplicable. Sánchez v. Eastern Airlines, 114 DPR 691, 695 (1983).
Los tribunales tenemos facultad para proveer el remedio adecuado, conforme a la prueba que se nos presente y admita, aunque dicho remedio no haya sido solicitado, a fin de cumplir cabalmente nuestra función de hacer justicia. Art. 2.014(K) de la Ley de la Judicatura del E.L.A., Ley 201 de 22 de agosto de 2003, según enmendada, 4 LPRA § 240(K); Ñeca Mortg Corp. v. A & W. Dev. S.E., 137 DPR 860 (1995).
Lo que importa son los hechos aducidos en la Demanda, no las teorías jurídicas o remedios que se invoquen. Sánchez v. Eastern Airlines, supra.
Ill
La determinación del foro de Instancia lacera nuestro sentido de lo que es justo. El señor Oropeza Ramos pagó $700 hace treinta y siete años por un terreno que compró para construir una casa y vivir en ella con su familia. Lo hizo mediante contrato verbal y luego surgieron discrepancias en cuanto a las colindancias del terreno adquirido. La vendedora esperó a que la casa estuviera construida para pedirle al señor Oropeza que la mudara porque no la había construido en el lugar indicado. Es un hecho irrefutado que la vendedora, en un contrato escrito que se otorgó posteriormente, no se obligaba a segregar el terreno. También es un hecho que en 1983, un tribunal estableció que Oropeza era, en efecto, dueño del solar y estableció los linderos del mismo.' Oropeza desmontó la casa y con esa acción comenzó una serie de incidentes que concluyen con la declaración del foro de instancia de que el negocio de compraventa fue nulo porque no se tenía un título inscribible. Se pretende concluir la controversia devolviéndose las partes las contraprestaciones, en el caso del señor Oropeza la devolución por la vendedora de los $700 que pagó en 1971, devaluados luego de treinta y siete años de inflación.
*1030 Hemos visto en nuestro análisis anterior como nuestro ordenamiento jurídico reconoce varias maneras de adquirir un bien inmueble.
Con el anterior trasfondo doctrinal, examinamos el expediente ante nos. Surge del mismo que, en efecto, el señor Oropeza Ramos ha adquirido el terreno en controversia por medio de la prescripción adquisitiva ordinaria, de buena fe y con justo título. El señor Oropeza adquirió el solar de quien pensaba que era y, en efecto, era la dueña de la finca y quien podía transmitir su dominio, la Sra. Petra Rodríguez. Por otro lado, el negocio jurídico por el cual se tramitó la adquisición del solar fue el de la compraventa, contrato que normalmente se utiliza para transmitir el derecho real sobre un bien inmueble. Oropeza tenía justo título, aunque el mismo no fuese perfecto porque no se elevó el negocio a escritura pública, ni se había segregado el terreno, por lo que el negocio jurídico no era inscribible.
El señor Oropeza Ramos poseyó el solar en controversia como dueño, al menos desde el 1983, esto en vista de que desde esa fecha realiza actos de dominio en dicho terreno en virtud del acuerdo suscrito con Doña Petra Rodríguez y la determinación judicial del 3 de marzo de 1983, por lo que está presente en este caso el requisito del término requerido de 10 años para la prescripción adquisitiva ordinaria.
El análisis de la totalidad de la prueba presentada en instancia nos convence de que las conclusiones de hechos formuladas por el foro de instancia están en conflicto con el balance más racional y justo de la totalidad de la prueba. Veamos.
Los actos realizados por el señor Oropeza Ramos de visitar el solar, limpiarlo y estar al tanto de éste, hacer los trámites y remover el poste que la Autoridad de Energía Eléctrica plantó en el centro del solar y luego comenzar a construir en él, son sin duda indicadores de una posesión civil, ininterrumpida, en concepto de dueño, máxime cuando nuestro ordenamiento establece la presunción de la continuidad de la posesión. Es un hecho incontrovertido que fue el hijo del señor Oropeza quien le comunicó en 1989 que habían colocado un poste en medio del terreno, lo que tiende a corroborar que el hijo siguió las instrucciones de su padre de estar pendiente del terreno y fueron las observaciones del hijo las que indujeron a Oropeza a venir en 1989 a hacer gestiones para sacar el poste de la AEE de su terreno. La prueba documental señala que durante tres años, el señor Oropeza estuvo visitando la AEE para lograr que mudaran el poste colocado en medio de la propiedad en controversia, esto es, 1990, 1991 y 1992. Desde el 1983, un tribunal reconoció que el señor Oropeza había comprado dicho terreno, por lo que no existe duda de que lo poseía a título de dueño. Y a título de dueño, compareció ante la AEE, la que describió el trabajo a realizarse como “verificación de estatus de poste primario en su propiedad”, refiriéndose al señor Oropeza, el promovente del trabajo. Es razonable pensar que mientras hacía dichos trámites en la AEE, el señor Oropeza visitaba el solar para verificar si en efecto habían mudado el poste. Es por ello que no damos al testimonio de los hijos de doña Petra el valor probatorio que le adjudicó el foro de instancia cuando éstos declaran que no vieron nunca al señor Oropeza por allí y que "no se cortaba el pasto”. Cortar la hierba no es el único acto de dominio que puede llevar a cabo un poseedor de buena fe y a título de dueño. Las hijas de doña Petra, que declararon que nunca veían al señor Oropeza por dicho terreno, no vivían allí. La prueba documental demuestra, sin lugar a dudas, que Oropeza llevó a cabo inconfundibles actos de dominio, al menos desde la década de los años 80.
Por otro lado, no hubo prueba respecto a la interrupción de la posesión. Quedó evidenciado por el expediente examinado y las declaraciones vertidas, que la parte demandante-apelada desde el momento en que se determinó por vía judicial los límites del solar mensurado a instancia de la propia parte vendedora, en 1983, hasta que se instó el pleito que nos ocupa, en 2003, no le reclamó al señor Oropeza Ramos su dominio sobre la finca. Valga subrayar que la parte demandante que instó la acción de desahucio y cobro de dinero en marzo del 2003, luego desistió de esta acción en noviembre de 2006, antes de que se celebrara el juicio en su fondo.
A la luz de la totalidad de la prueba, concluimos que existen en este caso todos los elementos esbozados *1031 anteriormente, necesarios para configurar la prescripción adquisitiva ordinaria, a saber, una posesión de buena fe y justo título, ininterrumpida, pública, pacífica y en concepto de dueño durante el tiempo fijado por ley.
IV
Por los fundamentos expresados anteriormente, procedemos a REVOCAR la Sentencia apelada y, en su lugar, DECRETAMOS el título dominical sobre la finca en controversia a nombre del Sr. Félix Oropeza Ramos. Los límites establecidos son los declarados por doña Petra Rodríguez Pérez y acogidos por el tribunal en su Sentencia de 3 de marzo de 1983: desde el palo de tamarindo al de aguacate y de allí hasta la colindancia, con una cabida de 500 m.c. Se le ordena a la parte demandante-apelada, Sra. Petra Rodríguez Pérez, que firme las autorizaciones para la presentación de los planos de segregación y de inscripción del solar a nombre del Sr. Félix Oropeza Ramos, de manera que éste tenga un título inscribible en el Registro de la Propiedad.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones